State *v.* Missio.

STATE *v.* MISSIO.

(*Jackson.* June 27, 1900.)

1. JUDICIAL NOTICE. *Of incumbent of District Attorney's office.*

This Court takes judicial notice of the name of the person who fills the office of district attorney. (*Post, pp. 220.*)

2. INDICTMENT. *For fraudulently receiving stolen property, must aver what.*

An indictment for fraudulently receiving stolen property need not aver by whom or from whose possession the property was stolen, but it must aver ownership of the property in some person, and its taking from him *animo furandi.* (*Post, pp. 222, 223.*)

Cases cited: Swaggerty *v.* State, 9 Yer., 338; Wright *v.* State, 5 Yer., 154; Parham *v.* State, 10 Lea, 500; Brooks *v.* State, 5 Bax., 607; Younkins *v.* State, 2 Cold., 219.

3. EVIDENCE. *To support charge of receiving stolen goods.*

Where, in an indictment for receiving stolen goods, the ownership of the stolen property is laid in a corporation, it is essential to prove the existence of the corporation, and that it had a general or special property in the thing stolen. (*Post, p. 223.*)

Case cited: Brooks *v.* State, 5 Bax., 607.

4. SAME. *Of existence of foreign corporation.*

The existence of foreign corporations is not provable by a certified list of same published with the session Acts of the Legislature. That method of proof is applicable alone to domestic corporations, chartered and organized under the general incorporation Act of 1875 and its amendments. (*Post, pp. 220–222.*)

Act construed: Acts 1875, Ch. 142, § 20.

Code construed: § 2033 (S.); § 1697 (M. & V.).

Cases cited: Brewer *v.* State, 7 Lea, 682; Tillery *p.* State, 10 Lea, 35; Anderson *v.* Railroad, 91 Tenn., 47.

State v. Missio.

5. SAME. *Same.*

Proof of the existence of a foreign corporation, *e. g.*, a common carrier. in whom ownership of property is laid in an indictment for receiving stolen goods, may be made without production of a copy of its charter by showing that it was engaged under a corporate name in carrying on the business of a common carrier through its agents and employees. Proof of its capacity under its charter to hold property, or of its compliance with the State laws touching foreign corporations, is not required. (*Post, pp. 223–227.*)

Code construed: § 7357 (S.); § 6224 (M. & V.); § 5379 (T. & S.).

Cases cited and distinguished: Jones *v.* State, 5 Sneed, 347; Owen *v.* State, 5 Sneed, 493.

6. CHARGE OF COURT. *Erroneous method of giving requests.*

It is a violation of the imperative requirements of the statute, and reversible error, for the Court, over objection of the defendant in a felony case, to permit the Attorney-general to read before the jury a request for additional instructions, and to orally adopt the proposition therein contained as part of his charge without indorsing his decision thereon or reading the same to the jury. Such requests should not be read before the jury by counsel, but handed to the Court for his action. The Court should indorse his action thereon, and, if the request is given, should read it and his action thereon to the jury without one word of oral comment. (*Post, pp. 227–231.*)

Code construed: §§ 7186, 7187 (S.); § 6052 (M. & V.).

Cases cited: Newman *v.* State, 6 Bax., 164; Manier *v.* State, 6 Bax., 603; Insurance Co. *v.* Trustees, etc., 91 Tenn., 137.

---

FROM SHELBY.

---

Appeal in error from Criminal Court of Shelby County. J. M. STEEN, Sp. J.

State *v.* Missio.

L. T. M. CANADA and L. LEHMAN for Missio. Attorney-general PICKLE for State.

WILKES, J. The indictment in this case charges the defendant "with unlawfully, feloniously, and fraudulently receiving, buying, concealing, and aiding in concealing four boxes of tobacco of the value of $15 per box, the proper goods and chattels of the Southern Railway Co., a corporation chartered by law, which had been before, as he, the defendant, then and there well knew, feloniously and fradulently taken, stolen, and carried away from the said Southern Railway Co., with the intent feloniously and fraudulently to deprive the true owner thereof."

There was a plea of not guilty and a trial, conviction, and sentence of three years in the State penitentiary, and defendant has appealed.

The bill of exceptions states that Mr. Patterson, whom we will judicially know was the District Attorney-general prosecuting for the State, said during the trial that he desired to offer in evidence, as proof of the corporate character of the Southern Railway Company, the list of corporations published in the Acts of 1897, showing that the Southern Railway Company is a corporation.

The District Attorney-general no doubt referred to the certified list of corporations set out in the Acts of the General Assembly of 1897. At pages 802 to 827 there is published a list of

State *v.* Missio.

foreign corporations which have filed their charters in the State in order to do business therein, and in this list appears the following: "Southern Railway Company, Richmond, Va., June 25, 1894."

There is no certificate as to the correctness of this list. We know of no authority of law for its publication.

The statute -(Shannon, § 7357) provides: "On all trials for offenses when the existence of a corporation must be shown, a legally authenticated copy of the charter of such corporation or a book purporting to be the public statute book of the United States, or of the particular State in which the charter is printed, shall be *prima facie* evidence of the existence of such corporation."

This section applies to all corporations, whether foreign or domestic, and there was no attempt to comply with this provision in the present case, and it is insisted that proof of corporate character of a foreign corporation could be made only in this manner.

The Act of 1875, Chap. 142, Sec. 20 (Shannon, § 2033), provides that the Secretary of State shall have published and bound with the Acts of each General Assembly a certified list of all corporations organized under that Act since the last publication, giving the name and date of organization of each corporation, and such publi-

cation shall be legal evidence of the existence of such corporation.

Construing this Act, it has been held that such publication is *prima facie* evidence of the existence or legal incorporation of such corporation. *Brewer* v. *The State,* 7 Lea, 682; *Tillery* v. *The State,* 10 Lea, 35; *Anderson* v. *The Railroad,* 7 Pickle, 47.

But this statute is by its terms limited to such domestic corporations as are organized under the Act of 1875, and its amendments, and does not apply to foreign corporations, and there is no law which makes a list of foreign corporations made out and published by the Secretary of State in the public volumes of the Acts evidence to prove corporate existence.

The ownership of the property alleged to have been stolen, and afterwards received by the defendant, knowing it to have been stolen, is laid in "The Southern Railway Company, a corporation chartered by law," and it was essential to prove the existence of such corporation and its ownership, general or special, of the property in order to sustain the indictment. *Brooks* v. *The State,* 5 Bax., 607.

It was held in the case of *Swaggerty* v. *The State,* 9 Yer., 338, that an indictment for receiving stolen property need not show by whom the property was stolen, nor from whose posses-

State *v.* Missio.

sion it was stolen, nor that the principal thief had been convicted. But neither this nor any other case dispenses with the necessity for proving some ownership of the property and its taking, and the intention of the party who receives it to deprive the true owner thereof knowing it to have been stolen. These are the essential elements of the offense. *Wright* v. *The State,* 5 Yer., 154; *Parham* v. *The State,* 10 Lea, 500; *Brooks* v. *The State,* 5 Bax., 607; *Younkins* v. *The State,* 2 Cold., 219.

It is not necessary to prove who stole the goods, nor the name of the party from whom taken; but it is necessary to prove the ownership, general or special, of some person, and the fact that they have been stolen from the true owner by some one, and have eventually been received by the defendant, knowing them to have been stolen, and with the intent on the part of the defendant to deprive the true owner thereof, and when the ownership is laid in a certain person it must be so proven.

The defendant moved at the proper time to exclude such evidence as had been offered to prove the incorporation of the Southern Railway Company, because incompetent and not the best evidence, and not such as the law requires, all of which the Court overruled.

The case is treated as though the corporate

character could only be proven in one of the modes above pointed out.

We are of opinion that while it is necessary to prove the ownership, general or special, by some one, of the goods alleged to have been feloniously received, it is not necessary to prove the charter of the railroad company, nor its capacity under its charter and the law to be the owner, general or special, of the property. It is shown in this case that the goods were shipped over the Southern Railway, as a public carrier, from Haines, at Winston, North Carolina, to McClintock & Pea Bros., at Grosbeck, Texas. There can be no question under this record but that the goods were feloniously taken from the custody and temporary ownership of this company while in transit, and that they were in possession and ownership of them as a public carrier at the time they were stolen.

We think this is sufficient evidence of corporate character and ownership, and it would be a rule too strict to require that in this collateral though essential matter of ownership the State must prove the corporate existence and character of the railway company by a copy of its charter, and that its charter was regular, and that it had complied with the law in regard to foreign corporations in order to do business or own property in the State, and such strictness would often defeat the ends of justice. In an indictment for burglary

it has been held that the name of the corporation, and other matters relating to incorporation, need not be stated in the indictment. *People* v. *Henry,* 77 Cal., 445; *State* v. *Shields,* 89 Mo., 259; *Fisher* v. *State,* 40 N. J. L., 169.

And in *Norton* v. *The State,* 74 Ind., 337, it was held that the corporate existence would be implied without being specially averred.

And in *Crawford* v. *The State,* 68 Ga., 822, it is held that such averment is surplusage.

But whether this be the correct rule or not, we think that in a collateral matter, as this is, it is not necessary to set out or prove the corporation by producing its charter, nor that the company has complied with all the laws relating to the creation, organization, and operation of corporations.

We think proof that the company was engaged under a corporate name in carrying on the business of a public carrier through its agents and employees is proof of *de facto* corporate existence, organization, and authority to do business and act as such corporation, and sufficient to sustain a conviction in criminal cases. *United States* v. *Amedy,* 11 Wheaton, 392; *People* v. *Frank,* 28 Cal., 507; *People* v. *Burrie,* 49 Cal., 342; *Smith* v. *State.* 28 Ind., 321; *State* v. *Thompson,* 23 Kansas, 338 (S. C., 33 Am. Rep., 165); *People* v. *Davis,* 21 Wend., 309; *People* v. *Stearns,* 21 Wend., 409; *Calkins* v. *The State,* 18 Ohio St.,

366 (S. C., 98 Am. Dec., 121); *State* v. *Habib,*
18 R. I., 558.

The present case is, we think, distinguishable
from the case of *Jones* v. *The State,* 5 Sneed,
347, and *Owen* v. *The State,* 5 Sneed, 493.
Those were indictments for passing counterfeit
bank notes, and it was held in the latter case
that the Court would take judicial notice of the
existence and charter of the Bank of Tennessee
as a domestic corporation, but in both cases that
the existence and charter of a foreign corpora-
tion must be proven by an authenticated copy of
the charter of the bank or the production of a
book purporting to be the public statute book of
the State in which the charter was granted. This
is in accord with the statute. Shannon, § 7357.
In those cases the charge was counterfeiting bank
notes. To make the offense an indictable one, it
was essential to show that the bank notes had
been issued by lawful authority. The power to
issue bank notes is not an ordinary power attach-
ing generally to all corporations, but only to such
as have charter authority for that purpose, for
not even all banks have the right to issue bank
notes, but only such banks as are given such
authority by their charters, and the notes could
only be issued according to the terms and pro-
visions of the charter. It was necessary, therefore,
in such cases, to prove the charters in order to

State *v.* Missio.

test the validity of the notes so as to make out the offense of counterfeiting.

But no such reasons or considerations exist in the present case, as the power to own personal property is general in all corporations, and does not depend upon specific charter provisions.

The third assignment of error is as follows:

"The Court erred in permitting the District Attorney to read a special instruction to the jury, and in adopting it as part of the charge, without its ever having been read to the jury by the Court."

The bill of exceptions on this feature of the case contains this recital:

"After reading the general charge to the jury the Court read the special instructions asked by defendant's counsel, whereupon the Attorney-general asked the Court to charge, in addition, and as amendatory of the special instruction, the following: 'On this question the jury may consider the proof admitted by the Court on the question of the existence of the corporation,'" which, after objection by counsel for defendant, at the suggestion of the Court, was reduced to writing, read to the Court by the Attorney-general in the presence of the jury, and was given by the Court and adopted as part of the charge, and handed to the jury as part of the charge of the Court. The Court did not actually read the

amendment, as prepared by the Attorney-general, to the jury.

The statute (Shannon, § 7186) is in the following words:

"On the trial of all felonies every word of the Judge's charge shall be reduced to writing before given to the jury, and no part of it whatever shall be delivered orally in any such case, but it shall be delivered wholly in writing.

"Every word of the charge shall be written, and read from the writing, which shall be filed with the papers, and the jury shall take it out with them upon their retirement."

Section 7187: "If the attorneys on either side desire further instructions given to the jury, they shall write precisely what they desire the Judge to say further. In such case the Judge shall reduce his decision on the proposition or propositions to writing, and also read the same to the jury without one word of oral comment, it being intended to prohibit Judges wholly from making oral statements to juries in any case involving the liberties and lives of the citizens."

In the case of *Newman* v. *The State,* 6 Bax., 164, it was held that this statute was imperative, and not directory, and must be observed, and a failure to do so was erroneous.

In the case of *Manier* v. *The State,* 6 Bax., 603, the same construction was placed on it, and it was held that the trial Judge had no right

to read from any book in delivering his charge, but his plain duty was to write or have printed every word, and then commit the charge to the jury upon their retirement. The real point in this latter case is that part of the charge being extracts from the Code, could not be or were not taken to the jury room, and it was held that one of the evils intended to be corrected was the disputation among jurors as to what the oral charge was, and their frequent return into Court to be recharged on points not remembered or comprehended by all. Section 4803 lays down the same rule for civil cases, and the same construction was adopted in *Ins. Co.* v. *Trustees, etc.,* 7 Pickle, 137, and applied to a civil case in all the strictness it is applied in criminal cases.

Now, in this case, the special instruction was reduced to writing, not by the Court, but by the Attorney-general. It was read to the Court in the presence of the jury, and was given by the Court and adopted and handed to the jury as part of the charge, but the Court did not in proper person read it to the jury, nor reduce his decision thereon to writing. It appears from from the case of *Manier* v. *The State,* 6 Bax., 603, that the Judge need not actually write the charge or instructions with his own hand, but may have it printed, and we can see no reason why he may not authorize another to write the instructions under his direction, or adopt the in-

struction as it is written by counsel, if he see proper to do so.

It is said in *Insurance Co.* v. *Trustee, etc.,* 7 Pickle, 138, that "the reason of the law was, that all that was said to the jury in regard to the case might appear before the appellate Court just as it occurred in the trial Court."

It is argued that the reason of the law is met in this case inasmuch as the instruction was given to the jury, was adopted as part of the charge, and handed to the jury as such. The statute says (§ 7187), that "the trial Judge shall also read the same to the jury without one word of oral comment, the object being to prohibit. Judges wholly from making oral statements to juries in any case involving the lives or liberties of the citizens."

We think it an improper practice for counsel, when making requests for specific instructions from the Court, to read the same in the presence of the jury in any case, and more especially in a criminal case. After they are prepared by counsel, they should be handed to the Judge without reading them aloud in the presence of the jury; and after he has examined the same, and reduced his decision thereon to writing, he shall state to the jury so much of them as he deems correct and proper to give.

If he approve the written request presented as a whole, there is no reason why he may not

State *v.* Missio.

adopt the writing furnished him as his own, and make it a part of his charge by attaching it thereto, but he should himself read it to the jury as finally approved by himself, and make it with his decision in that way his own, and the jury should so understand it.

We think that the course pursued in this case was not a compliance with the statute, which expressly and plainly says he shall read it to the jury without a word of oral comment. We are unable to see how the trial Judge could adopt the reading of another without making an oral statement to that effect.

For failure to comply with this requirement of the statute the judgment of the Court below is reversed, and the cause remanded for a new trial. The State will pay costs of appeal.