## THE STATE v. IKE SAKOWSKI, Appellant.

**Division Two, December 12, 1905.**

1. **RECEIVING STOLEN GOODS: Indictment: Intent.** Under the statute (sec. 1916, R. S. 1899), it is not necessary that an indictment for receiving stolen goods, knowing them to have been stolen, allege that defendant received the goods with intent to deprive the owner thereof or to aid the thief.

2. ———: ———: **Goods Stolen from Particular Person: Surplusage.** The allegation, in an indictment for receiving stolen goods, knowing them to have been stolen, that defendant knew the goods were stolen "from the St. Louis & San Francisco Railroad Company," was unnecessary and immaterial; and being so, a failure to prove such knowledge on the part of the defendant, did not entitle him to an acquittal.

3. ———: ———: **Description of Stolen Property.** Where, in a prosecution for receiving stolen goods, knowing them to have been stolen, the indictment describes the property as "two cases containing thirty-five pairs of shoes, all of the value of forty-nine dollars and eighty cents," there is no merit in the contention that the description did not include the shoes, but the boxes only.

4. ———: **Instruction.** In a prosecution for receiving stolen goods, knowing them to have been stolen, an instruction was not erroneous which required the jury to find that the goods were stolen, taken and carried away from the possession of the owner by some person other than the defendant, with the intent, on the part of the person so stealing and carrying them away, unlawfully and fraudulently to convert said property to his own use and permanently deprive the owner thereof without his consent; said instruction was more elaborate than was necessary in a prosecution for receiving stolen goods.

5. ———: ———: **Favorable to Defendant.** The following instruction held not erroneous, but very favorable to defendant: "You are further instructed that if you believe and find from the evidence that the defendant or his wife bought the property mentioned in the indictment and in evidence, and bought it in good faith from one having possession thereof, and that the defendant had no knowledge at the time that such property was stolen, you must acquit him."

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

Affirmed.

*Thos. B. Harvey* for appellant.

(1) The motion to quash the indictment for failure to allege that the property was received with a criminal intent, should have been sustained. Clark's Cr. Law, p. 289; Rapalje on Larceny, secs. 311 and 316; Clark's Cr. Proc., p. 265; People v. Johnson, 1 Park. Cr. Rep. (N. Y.) 564; Arcia v. State, 26 Tex. App. 193; State v. Hodges, 55 Md. 136; State v. Casteel, 53 Mo. 126; State v. Walker, 174 Mo. 518; State v. Rutherford, 152 Mo. 124. (2) The court should

have sustained defendant's demurrer to the State's case for failure to show that defendant knew that the property had been stolen from the St. Louis & San Francisco Railroad Company; and it was error to refuse defendant's instruction to the effect that the proof of such fact was made necessary by the allegations of the indictment. State v. Samuels, 144 Mo. 68; 10 Ency. P. & P. 530; Beale's Cr. P. & P. sec. 112; Clark's Cr. Proc., p. 182; Bishop's New Cr. Proc., secs. 485-7; State v. Noble, 15 Me. 476; U. S. v. Howard, 3 Sumner 14. (3) Defendant's demurrer to the prosecution's evidence on the ground that it failed to prove any value of the "two cases," the only property alleged to have been stolen and received, should have been sustained. 1 Bishop, New Cr. Proc., sec. 508; 2 Bishop, New Cr. Proc., sec. 700 (2); State v. Derst, 10 Nev. 443; People v. Logan, 1 Nev. 110; Com. v. Proprietors, 9 Pick. 142; Com. v. Bolkum, 3 Pick. 281.

*Herbert S. Hadley,* Attorney-General, and *Rush C. Lake,* Assistant Attorney-General, for the State.

(1) The form of this indictment was substantially approved in the case of State v. Fink, 186 Mo. 50. (2) The demurrer to the evidence was properly overruled. Every fact necessary to make out the State's case was clearly established. (3) It is not essential to an indictment or information charging the crime of receiving stolen property that the defendant received the stolen property knowing it to have been stolen from a certain person. Kelley on Criminal Law, sec. 682. The indictment is sufficient without the allegation that the defendant, "well knowing the said goods, chattels and personal property to have been stolen, taken and carried away (from the said St. Louis & San Francisco Railroad Company, a corporation as aforesaid, the owner thereof,") etc. The words in parentheses are non-essential, and should be treated as

surplusage. Kelley's Criminal Law, sec. 201; State v. Wall, 39 Mo. 532; State v. Nation, 75 Mo. 53; State v. Meyers, 99 Mo. 114; State v. Taylor, 117 Mo. 184; State v. Walker, 167 Mo. 370.

GANTT, J.—The defendant was indicted for receiving stolen goods in the city of St. Louis, on May 21, 1903. As the indictment is challenged, we produce it in full, as follows:

"The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court duly impaneled, sworn and charged upon their oath present, that Ike Sakowski, on and about the ninth day of May, one thousand nine hundred and three, at the city of St. Louis aforesaid, two cases containing thirty-five pairs of shoes, all of the value of forty-nine dollars and eighty cents, of the goods, chattels and personal property of the St. Louis & San Francisco Railroad Company, a corporation, then lately before feloniously stolen, taken and carried away from the said St. Louis & San Francisco Railroad Company, a corporation, as aforesaid, with the intent on the part of the thief to permanently deprive the owner of the use thereof, feloniously and fraudulently did from said thief buy, receive and have, the said Ike Sakowski then and there well knowing the said goods, chattels and personal property to have been stolen, taken and carried away from the said St. Louis & San Francisco Railroad Company, a corporation as aforesaid, the owner thereof, with the intent on the part of the thief, as aforesaid, to permanently deprive the owner of the use thereof; contrary to the form of the statute in such case made and provided and against the peace and dignity of the State."

The defendant was arraigned and entered his plea of not guilty. Afterwards, on January 11, 1904, the defendant withdrew his plea of not guilty and filed his motion to quash on the ground that the indictment

failed to state facts sufficient to constitute any offense, and did not allege that the property was received by the defendant with the intention to deprive the owner thereof, or any other intent or purpose in receiving such property. The motion to quash was overruled and defendant duly excepted. Defendant was then rearraigned, and pleaded not guilty. The testimony on the part of the State tended to establish the following facts:

"That on the 8th day of May, 1903, the Brown Shoe Company, a firm in St. Louis, Missouri, sent by the St. Louis Transfer Company sixty-two cases of shoes, consigned upon order to Miller Bros., Leger, Oklahoma Territory, to the St. Louis & San Francisco Railroad freight depot in the city of St. Louis.

"These sixty-two cases were checked out of the Brown Shoe Company and were in turn checked into the 'Frisco depot;' but in checking the shipment from the depot into the car, it was found the shipment was two cases short.

"Immediately upon the shortage being discovered, the railroad company notified the Brown Shoe Company, and the St. Louis Transfer Company's foreman, Ben Humphreys, testifies that about two o'clock on the afternoon of that day he saw Zinks pass along the street near the place of business of the transfer company with two cases of shoes in his wagon. He knew Zinks, for he had until noon that day been working for the St. Louis Transfer Company as an extra or 'wild catting,' which means that the transfer company was short of teams and hired this man with the team of another man to do hauling; that he had been discharged at noon that day for lack of work.

"It appears that Zinks drove down the street in the neighborhood of defendant's second-hand store and then opened negotiations with a colored man named Jackson, who was to act as agent for Zinks in securing a customer for the shoes.

"The testimony of Zinks is to the effect that he stole the shoes at noon or a little later, and then hauled them to the corner of Second and Valentine streets in St. Louis, about half a block from defendant's store, which is at 502 South Second street. Jackson was directed to go to the defendant's place of business and arrange the sale, which he did, and Zinks drove into the alley, unloaded the two cases of shoes, and Zinks, Jackson and a man known as Willir, carried the two cases into the defendant's place of business, and the shoes were at once taken out of the cases and piled on the floor, and at the direction of the defendant, the empty cases were carried out of the store and given to an old colored woman and Zinks ordered them burned, and the shoes left in the paper boxes or cartons, each carton containing a pair of shoes and each carton bearing the name of 'Brown Shoe Company, as manufacturers, St. Louis, U. S. A.' The wooden boxes or cases were each marked on the outside with the name of the consignee, 'Miller Brothers, Leger, Oklahoma Territory.'

"The negotiations for the sale to the defendant were conducted by the colored man, Jackson, with the defendant's wife. She paid ten dollars for the thirty-five pairs of shoes to Zinks.

"The testimony of both Jackson and Zinks is to the effect that the defendant was in the store at the time and knew of the transaction. Jackson testifies that defendant helped to take the shoes out of the boxes, and when the boxes were emptied, defendant said to the old colored woman, 'Take the boxes out,' meaning the two wooden boxes. Jackson testified that for his share in making the trade Zinks gave him a pair of shoes, and that he traded them to the defendant for a second-hand pair.

"Zinks corroborates the statements of Jackson as to the sale of the shoes; that they were paid for by the defendant's wife; that defendant was there when

the shoes were received, and that defendant 'took and piled the shoes away,' and Zinks testifies that the shoes were delivered to defendant, who gave directions as to where the shoes should be placed in the store. Zinks testified that he delivered the shoes in an ice wagon marked 'Theodore W. Merten Ice & Coal Company;' that he had on his working clothes, clothes he had on when hauling goods upon a transfer wagon, and that he was under the influence of liquor at the time.''

At the close of the State's evidence the defendant demurred to it on four grounds, to-wit:

''1st.   It is insufficient to sustain the allegations of the indictment.

''2nd.   It shows that the purchase and receipt of the property was by the wife of defendant, and not by him.

''3rd.   The proof shows no value of the cases, the only property alleged to have been received, the contents thereof, as alleged in the indictment, being merely descriptive of the cases, and no allegation of receiving shoes.

''4th.   There is no evidence to sustain the allegation that defendant knew that the property had been stolen from the 'St. Louis & San Francisco Railroad Company.' ''

Which demurrer the court overruled and thereupon the defendant offered evidence in substance as follows:

''The testimony upon the part of the defendant was to the effect that he had nothing to do with the transaction, that the negotiations were conducted solely by his wife; that he did nothing concerning the purchase nor the receipt of the shoes into his store; he admits the ownership of the store and that it was run in his name.   His contention is that his wife paid seventy-five cents per pair for the shoes, or a total sum of twenty-six dollars.   Defendant's wife testifies that

the shoes were purchased by her and that she paid twenty-six dollars for them, and that defendant had nothing to do with them. Both defendant and his wife sought by their testimony to justify the purchase of the shoes upon the theory that it was done in aid of the police in the detection of crime, claiming the police gave them permission to so conduct their business that anything could be purchased by them, and these should be exhibited ·and held until the police were advised whether it was stolen.''

At the close of all of the evidence the court instructed the jury as follows:

''First:  If you believe and find from the evidence and under these instructions that at the city of St. Louis and State of Missouri, on or about the 9th day of May, 1903, or at some time prior thereto, the property mentioned in the indictment herein, that is to say, two cases containing thirty-five pairs of shoes, were unlawfully and fraudulently stolen, taken and carried away from the possession of the St. Louis & San Francisco Railroad Company, and that the said St. Louis & San Francisco Company was then a corporation, by some person other than the defendant, Ike Sakowski, with the intent on the part of the person so taking, stealing and carrying away the same unlawfully and fraudulently to convert said property to his own use and permanently to deprive the said St. Louis & San Francisco Railroad Company thereof, without its consent, and that the property so stolen, taken and carried away was of the value of thirty dollars or more, and was the property of the St. Louis & San Francisco Railroad Company.  And you further find that after the said property had been stolen, taken and carried away as aforesaid by some person other than the defendant, the said defendant, Ike Sakowski, at the city of St. Louis and State of Missouri, on or about the 9th day of May, 1903, unlawfully and fraudulently and wrongfully did receive said property into his, the de-

fendant's possession, knowing at the time he received said property that it was stolen. And that he received the same with the unlawful and fraudulent intent to or for the purpose of aiding the thief or with the unlawful and fraudulent intent of permanently depriving the owner thereof; and you further find from the evidence that the property so received by the defendant was of the value of thirty dollars or more, you will find the defendant guilty as charged, and assess his punishment at imprisonment in the penitentiary for a term of not fewer than two years and not more than five years, and unless you so find the facts from the evidence, you will acquit the defendant.

"Unless you find from the evidence and under these instructions that the defendant bought or received the property, as herein mentioned, from some other person, knowing that the same was stolen property, as hereinabove set out, you should acquit the defendant; and the mere fact of the purchase and receipt and possession of said property by defendant raises no presumption that the defendant knew that the said property was stolen by another.

"Second. By the term 'knowing' that the property was stolen is not meant absolute personal and certain knowledge on the part of the defendant that the property mentioned in the indictment had been stolen, but such knowledge and information in his possession at the time he received the property as would put a person of ordinary prudence and caution on his guard under similar circumstances and would cause him to believe and to be satisfied that the property had been stolen.

"Third. You are further instructed that if you believe and find from the evidence that the defendant or his wife bought the property mentioned in the indictment and in evidence, and bought it in good faith from one having possession thereof, and that the de-

fendant had no knowledge at the time that such property was stolen, you must acquit him.

"Fourth. The court instructs the jury that if they believe and find from the evidence that the property alleged in the indictment was bought and received from the thief of the property by the wife of the defendant, and not by the defendant himself, and that he did not then and there participate with her in such purchase and receipt thereof, you will acquit the defendant.

"Fifth. The court instructs the jury that if the defendant bought and received the property in question and that he knew it was stolen, yet if he did not buy and receive the property with the wrong and fraudulent purpose of converting the property to his own use and with the intent to deprive the owner of said property, the jury will acquit the defendant.

"Sixth. You are further instructed that the indictment contains the formal statement of the charge, but is not to be taken as any evidence of defendant's guilt."

To the giving of which said instructions for the State the defendant duly excepted. Thereupon the defendant prayed the court to give the jury the following instruction:

"The court instructs the jury that under the allegations of the indictment it is necessary, before they can convict the defendant, that they shall find and believe from the evidence that the defendant not only knew that the property was stolen, but that he knew that it had been stolen from the St. Louis & San Francisco Railroad Company; and unless you find and believe from the evidence that he did know that the property was stolen from said railroad company, the jury will acquit the defendant."

Which said instruction the court refused to give to the jury, and the defendant duly excepted. The jury returned the following verdict:

"We, the jury in the above-entitled cause, find the defendant guilty of receiving stolen property of the value of thirty dollars or more, knowing the same to have been stolen, as charged in the indictment, and assess the punishment at imprisonment in the penitentiary for two years."

Thereupon, in due time the defendant filed his motion for new trial and in arrest of judgment, which was heard, considered and overruled, and the defendant appeals to this court.

I. A reversal of the judgment in this case is sought upon three grounds. The first assignment of error is aimed at the indictment which it is insisted is bad because it fails to allege that the property was received with a criminal intent. It is insisted by learned counsel for the defendant that the intent of the thief in stealing the property is sufficiently averred, but that no criminal purpose is charged to have inspired the defendant's act in receiving the same. In support of this contention we are cited to various cases in this State on the subject of larceny, which hold that it is essential that an indictment for larceny charge the felonious intent of a thief to convert the goods to his own use without the consent of the owner. [Witt v. State, 9 Mo. 663; State v. Rutherford, 152 Mo. 124.] But it is to be remembered that this is not a prosecution for larceny, but is one bottomed upon section 1916, Revised Statutes 1899, which provides that "every person who shall buy, or in any way receive, any goods, money, right in action, personal property, or any other valuable security or effects whatsoever, that shall have been embezzled, converted, taken, or secreted contrary to the provisions of the last four sections, or that shall have been stolen from another, knowing the same to have been so embezzled, taken or secreted, or stolen, shall, upon conviction, be punished in the same manner and to the same extent as for the

stealing of the money, property or other thing so bought or received." The offense is purely a statutory one, and the General Assembly in defining it has not made it a constituent element of the crime that the receiver should receive the same with intent to deprive the owner thereof. This section has been before this court for construction quite recently in the case of State v. Richmond, 186 Mo. 71. And the indictment in that case was assailed on the same ground upon which this indictment is challenged and it was said: "By its terms receiving the stolen property makes the case. In the absence of a statutory provision that the defendant received the goods with intent to deprive the owner thereof or to aid the thief, no such averment is necessary or essential in an indictment or information for this offense. The decisions of this court on the requisites of larceny are not applicable." [Gandolpho v. The State, 33 Ind. 439; State v. Moultrie, 34 La. Ann. 489; Nourse v. State, 2 Tex. App. 304.]

It may be conceded that in a number of the United States the statute, in defining the offense of receiving stolen goods, makes it one of the constituents of the crime that the property should be received, not only with a guilty knowledge of the fact that it was stolen, but also with the intent to defraud the owner, and the decisions under such statutes render the charge of an intent to defraud the owner necessary, but the reading of the statute upon which this indictment is based makes no such requirement. The averment in this indictment that the defendant feloniously and fraudulently did from the said thief buy, receive and have the said goods, then and there well knowing the same to have been stolen, taken and carried away, is a sufficient charge of the felony denounced by the statute. An indictment similar in all essentials to this was passed without adverse comment in State v. Fink, 186 Mo. 50.

II.   It is next insisted that the conviction in this case cannot stand because the evidence utterly failed to sustain the allegation in the indictment that the defendant received the property well knowing it "to have been stolen from the St. Louis & San Francisco Railroad Company." The defendant requested an instruction that before the jury could convict him, they must find and believe from the evidence that the defendant not only knew that the property was stolen, but that he knew that it had been stolen from the St. Louis & San Francisco Railroad Company, which instruction the court declined to give.   The issue is sharp.   It is conceded by the defendant that it was not at all necessary to plead that the defendant, in addition to knowing that the property was stolen when he received it, knew it was the property of the railroad company, but that the State, having alleged with unnecessary particularity knowledge of the party from whom the goods were stolen, was bound to establish it as charged.   On the other hand, it is insisted by the Attorney-General that so much of the indictment as avers a knowledge that the goods were stolen "from the St. Louis & San Francisco Railroad Company" was entirely unnecessary and immaterial, and may be treated as surplusage.

The rule in regard to the rejection of unnecessary allegations in an indictment or information as surplusage is well defined, the only difficulty arises in its application to specific cases.   In State v. Samuels, 144 Mo. l. c. 73, this court, through SHERWOOD, J., approved the statement by Mr. Bishop in his work on Criminal Procedure, volume 1, section 485, to the effect that if "a necessary allegation is made unnecessarily minute in description, the proof must satisfy the descriptive as well as the main part, since the one is essential to the identity of the other."   Clark in his Criminal Procedure, page 183, states the rule in this way: "Whenever a person or thing necessary to be mentioned in

the indictment is described with unnecessary particularity, all the circumstances of the description must be proved; for they are essential to its identity.''

In 1 Chitty's Criminal Law, 173, it is said: ''But though the indictment must in all respects be certain, yet the introduction of averments although superfluous and immaterial will seldom prejudice. For if the indictment can be supported without the words which are bad, they may on arrest of judgment be rejected as surplusage.'' In the same volume, page 250, the same learned authority says: ''It is a general rule which runs through the whole criminal law, that it is sufficient to prove so much of the indictment as shows the defendant has committed a substantive crime therein specified; and in the case of redundant allegations it is sufficient to prove part of what is alleged according to its legal effect, provided that that which is alleged, and not proved, be neither essential to the charge, nor describe or limit that which is essential.'' The rule is indicated by the cases; thus, in Rex v. Morris, 1 Leach Cr. L. 127, the indictment charged that ''Francis Morris, the goods and chattels above mentioned, so as aforesaid feloniously stolen, taken, and carried away, feloniously did receive and have; he the said Thomas Morris, then and there, well knowing the said goods and chattels last mentioned to have been feloniously stolen, taken and carried away.'' It was moved in arrest of the judgment that the indictment having alleged that Francis Morris had received the property, and that Thomas knew it to be stolen, the conviction could not be supported as against the accessory, for the fact of receiving and knowledge of the previous felony must reside in the same person. The twelve judges upon the question whether the words ''the said Thomas Morris'' could be rejected as surplusage, unanimously held that as the indictment would be sensible and good without these words, they may be stricken out as superabundant and unnecessary.

A similar ruling was made in Rex v. Redman, 2 Leach Cr. L. 536. In Rex v. Jervis, 6 C. & P. 156, it was urged by counsel for the defendant that the indictment should have charged the goods to have been stolen by a certain person, or else to have stated that he was unknown, but Chief Justice TINDAL said: "It would do; the offense created by the act of parliament is not the receiving stolen goods from any particular person, but receiving them knowing them to have been stolen," and such is the great weight of authority. It is entirely unnecessary to state in the indictment by whom the larceny was committed. In People v. Caswell, 21 Wend. 86, it was said by the court: "The receiving of stolen goods is, in its own nature, an offense, if they be known by the receiver to have been stolen; and if directly alleged to have been stolen by A., it is difficult to conceive that the prisoner should be able to defend himself even by proving that they were stolen by B., or by a failure of the evidence to show a thief in particular, so long as the accused knew that they were stolen. . . . It cannot therefore be an essential matter of description that anyone in particular committed the theft; and if one be named, this may be passed over as a mere circumstance." [2 East P. C. 780, sec. 163.] Neither is it essential or necessary to charge that the defendant knew the stolen property was the property of any particular person. It is sufficient to charge in the first instance the larceny of the property and its ownership, and that the defendant did receive the same while knowing that it was stolen. If the indictment alleges the property to have been stolen by A. and the prisoner cannot avail himself of the proof that it was stolen by B., or the failure to show a thief in particular, so long as he knew that the goods were stolen, neither can it avail him if the State fails to show that he knew whose property it was that was stolen, so long as he knows it was stolen when he received the same. In either case the particular alle-

gation is unnecessary and a failure to prove the same will not entitle him to go acquit because the State fails to show that he was possessed with the knowledge that it was stolen from a particular person who is alleged to be the owner in the indictment.

Clark in his Criminal Procedure, page 332, speaking of the allegation of knowledge, says: ''When knowledge is necessary to constitute the offense it is not only necessary to allege it but it is essential that it be proved. But . . . . where it is not necessary at all to constitute the offense, the allegation may be rejected as surplusage, and need not be proved.'' He is fully supported in this statement by the Supreme Court of Massachusetts in Com. v. Squire, 42 Mass. l. c. 260-261, and 1 Chitty's Criminal Law, 241. As already said, our statute, unlike the statute of 5 Anne, ch. 31, sec. 5, which regarded the receiver of stolen goods as only an accessory after the fact, treats the receiving of stolen goods knowing them to be stolen as an independent substantive offense. The offense is not the receiving the stolen property from the thief himself, or from any particular person, but the receiving of it knowing it to be stolen from any person whatsoever. [Anderson v. State, 38 Fla. 3; State v. Smith, 37 Mo. l. c. 64; Arch. Crim. Pl., 256.] If, then, as stated by that standard authority on Criminal Law, Mr. Chitty, ''it is sufficient to prove so much of the indictment as shows the defendant has committed a substantive crime therein specified,'' and it was wholly unnecessary and immaterial to charge that defendant knew the goods were stolen from the St. Louis & San Francisco Railroad Company, and the evidence abundantly established that defendant received the stolen shoes knowing them to have been stolen, proof of a substantive crime was established, and the failure to prove the non-essential, unnecessary and redundant allegation of knowledge that they were stolen from the railroad company, did not entitle him to an acquittal.

Unquestionably a necessary allegation may be made unnecessarily minute and the State required to prove it as alleged, but the allegation of knowledge of the person from whom the goods were stolen, being wholly unnecessary in this case, a failure to prove it did not affect the validity of the verdict based upon evidence which made out the crime upon the remaining averments of a substantive offense.

III. It is next urged that the description of the property alleged to have been stolen, to-wit, "Two cases containing thirty-five pairs of shoes, all of the value of forty-nine dollars and eighty cents," did not include the shoes, but the boxes only. We do not think that there is any merit in this contention. In the very nature of things, the thief in stealing, taking and carrying away "two cases containing thirty-five pairs of shoes" stole, took and carried away the shoes in the boxes. As said by the Supreme Court of Nevada in State v. Derst, 10 Nev. 443, "a man cannot steal a box containing a watch which is the property of the owner of the box without stealing the watch."

IV. The first instruction is assailed on the ground that it does not require the jury to find that the taking was without the owner's consent. The objection is without foundation. The instruction required the jury to find that the two boxes containing the shoes were stolen, taken and carried away from the possession of the St. Louis & San Francisco Railroad Company by some person other than defendant Sakowski, with the intent, on the part of the person so stealing and carrying them away, unlawfully and fraudulently to convert said property to his own use and permanently deprive the said railroad company thereof *without its consent*. No more definite language could have been employed in directing the jury that the taking must have been *without* the consent of the alleged owner. The clause "without its consent" evidently

refers to the stealing, taking and carrying away as well as to the conversion of the property. The instruction was far more elaborate than was necessary; it would have been amply sufficient under the statute to have required the jury to find that some person other than the defendant stole, took and carried away the goods described in the indictment, and that the defendant, knowing them to have been stolen, received the same. This court has often remarked that the same technical precision is not required in an instruction as in an indictment. The indictment in this case is not for larceny, and it was not necessary to give all the technical requisites of an indictment for larceny in the instruction.

V. Equally groundless is the criticism of the third instruction. It was in the interest of the defendant and very favorable to him.

Our conclusion is that there is no reversible error in the record, and the judgment must be and is affirmed.

All concur.