Don M. Williams, Plaintiff in Error,

*v.*

State of Tennessee, Defendant in Error.

390 S.W.2d 234.

(*Nashville,* December Term, 1964.)

Opinion filed March 4, 1965.

Petition to Rehear Denied April 7, 1965.

90

Joseph L. Lackey, Nashville; James H. Bateman, Nashville (On Petition to Rehear), for plaintiff in error.

George F. McCanless, Attorney General, Edgar P. Calhoun, Assistant Attorney General, for defendant in error.

Mr. Justice Holmes delivered the opinion of the Court.

The plaintiff in error, Don M. Williams, hereinafter referred to as defendant, was found guilty by the jury of receiving and concealing stolen property over the value of $100.00. His punishment was fixed at confinement in the State Penitentiary for a period of not more than five years. The defendant filed a motion for new trial and motion in arrest of judgment, both of which were overruled by the Trial Judge. He was sentenced to serve not more than five years nor less than three years in the State Penitentiary. He has duly perfected his appeal and assigned errors in this Court.

The indictment charges that on a day certain prior to the finding of the indictment the defendant received, concealed, and aided in concealing some twenty specifically described items asserted to be the property of a number of different owners which had been feloniously stolen, taken, and carried away by Denny G. Blankenship, Duane Moore Majeske, and other persons whose names are unknown to the Grand Jurors. The indictment further charges the defendant with "then and there knowing the aforesaid goods, furniture, and chattels to have been feloniously stolen, taken and carried away," and with intending then and there fraudulently to deprive the true owners thereof.

The record shows that on the night of June 8th the defendant and Denny G. Blankenship, who testified as to his participation in the theft of a large part of the goods described in the indictment, were at a gambling establishment in Nashville when Blankenship received information by telephone that the police had been to his apartment where the stolen goods were stored. Blankenship testified he sought the advice of the defendant as to what he should do and that defendant advised him that he knew a place where the goods could be stored. According to Blankenship, the defendant stated he kept his horses on a farm near Highway 100 and that the goods could be stored in a vacant house on that farm. This witness further testified that he arranged for others to rent a truck and load the goods in the truck, that he and the defendant remained together and later met the truck, that the defendant directed the driver of the truck to follow the car in which Blankenship and the defendant were riding to the farm where the goods could be stored.

The record further shows that on the early morning of June 9th the defendant awakened a tenant on this farm and asked him if he wanted to make a little money. This tenant testified that "a lady and two more men and an older lady, and a colored man" were with the defendant on this occasion. This witness stated that one of the women made a list of the goods being stored and gave the tenant a ten-dollar bill. The goods, most of which was furniture, were stored in an abandoned house on the farm. The tenant testified the defendant was present throughout the time the goods were being unloaded and stored.

The defendant testified that he only went to the farm on this occasion because Blankenship and the others could not find the place and requested him to come out and show them the way, and he did so. He denied any knowledge that the goods had been stolen at that time. Various witnesses testified to the ownership and the time of the theft of the goods described in the indictment.

There are seven assignments of error made in this Court. The first is that the Trial Court erred in overruling defendant's motion made before he entered his plea of not guilty to quash the indictment. The ground of this motion to quash was that the defendant is charged with 20 separate and distinct offenses of receiving and concealing the property of 20 individual persons or corporations, that for this reason the indictment was duplicitous in that it charged several separate and distinct offenses in one count.

By Assignment of Error Number Two it is asserted that the Trial Judge erred in overruling defendant's motion to require the State to elect to proceed on one

of the 20 separate and distinct offenses charged in the indictment.

Assignment of Error Number Three states that the verdict is excessive and that, had the State been required to elect one offense of the 20 charged, the proof on any one offense would have been insufficient to support a conviction.

Assignment of Error Number Four states that there is no determinative evidence to support the verdict and judgment of the Court thereon because there is nothing to indicate for which of the 20 separate and distinct felonies charged the defendant was convicted.

Assignment of Error Number Five is that the evidence does not support a conviction on any one separate offense charged in the indictment.

Assignment of Error Number Six is that the verdict is based upon evidence of 20 alleged offenses, no one of which was sufficiently proven by the evidence to support a verdict against the defendant.

By Assignment of Error Number Seven it is asserted that the Trial Court erred in overruling defendant's motion in arrest of judgment made in that Court.

All of these assignments raise the question of whether or not, in a prosecution for receiving and concealing stolen property which was originally stolen from different owners, there is a separate and distinct offense of receiving and concealing the property of each individual owner even though the property is all received and concealed at one time as a part of one transaction.

The offense of receiving or concealing stolen property is codified as T.C.A. sec. 39-4217. The elements of the

offense are specified by the statute to be (1) fraudulently receiving, buying, concealing, or aiding in concealing, (2) goods feloniously taken or stolen from another, or goods obtained by robbery or burglary, (3) knowing such goods to have been so obtained, (4) with intent to deprive the owner thereof.

In *State v. Missio,* 105 Tenn. 218, 223, 58 S.W. 216, 217, the Court, in discussing the elements of this offense, stated:

"It is not necessary to prove who stole the goods, nor the name of the party from whom taken; but it is necessary to prove the ownership, general or special, of some person, and the fact that they have been stolen from the true owner by some one, and have eventually been received by the defendant, knowing them to have been stolen, and with the intent on the part of the defendant to deprive the true owner thereof; and, when the ownership is laid in a certain person, it must be so proven."

In *Cobb v. State,* 201 Tenn. 676, 301 S.W.2d 370, the Court had under consideration the question of whether or not there was a fatal variance between the indictment and the proof in a prosecution for receiving and concealing stolen property. In discussing this question, the Court stated:

"Finally, in the opinion in the Sakowski case, supra (191 Mo. 635, 90 S.W. 435), it is stated that it is not essential to charge that the defendant knew the stolen property was the property of any particular person, but it is sufficient if he knew that the property was stolen from some person. This is in accordance with the statement in *State v. Missio,*" supra.

This Court again had occasion to consider the contention that there was a variance between the proof and the indictment in a prosecution for receiving and concealing stolen property in *O'Brien v. State,* 205 Tenn. 405, 326 S.W.2d 759. There it was shown that some of the property described in the indictment belonged to Mr. Craig individually but some of it was bought by a corporation in the name of the corporation that was operated by Mr. Craig. In holding that this asserted variance was not ground for reversal, the Court stated:

"* * * The variance of whether it was bought by Mr. Craig individually or bought by the corporation does not make any difference. This matter was touched on, in other words the conclusion reached by this Court in *Cobb & Hargrove v. State,* 201 Tenn. 676, 301 S.W.2d 370, 374, really forecloses the question. The question here argued is not directly argued there but the result of the well-reasoned opinion answers this question fully. In this case (*Cobb & Hargrove v. State,* supra) this Court made this very apt and pertinent statement which is applicable here:

"'* * * it is immaterial whether the property was received from A. or from B. so long as the receiver knew that the property was stolen from the owner, the gravamen of the crime under the statute being the fact that the receiver knew that he was receiving stolen property.'"

The reasoning of the Court in the Cobb and O'Brien cases is in accord with that of an overwhelming majority of the jurisdictions in this country, namely, that the identity of the owner of the goods is not an essential element of the offense, and, where the goods of several owners are received or concealed as a part of a single

transaction, there is only one offense of receiving or concealing stolen property. This rule is stated by the Supreme Court of California in *People v. Smith,* 26 Cal. 2d 854, 161 P.2d 941, as follows:

"The crime of receiving stolen goods consists of either buying or receiving personal property with knowledge that it has been stolen (Pen.Code, sec. 496). The gist of the offense is the purchase or receipt of the stolen goods with guilty knowledge but the particular ownership of the goods is not an element of the crime. Neither the legal nor moral character of the act is affected in any way by the fact that the stolen property may have belonged to several persons rather than to a single person. The crimes of larceny and of receiving stolen goods are separate and distinct, *People v. Hawkins,* 34 Cal. 181; 22 Cal.Jur. sec. 2, p. 556, and the pleading and proof of successive thefts from different owners enters into the pleading and proof of the crime of receiving such stolen property in a single transaction only for the purpose of showing that the property had in fact been stolen and that the person charged had guilty knowledge." 943 of 161 P.2d.

The above quotation from Smith is quoted with approval by the North Carolina Court in *State v. Brady,* 237 N.C. 675, 75 S.E.2d 791, at 793. In Brady an indictment charging the receipt of goods stolen from various owners was held valid

In *People v. Todaro,* 14 Ill.2d 594, 153 N.E.2d 563, 569, the Court answered the contention made by the defendant in the case sub judice, as follows:

"* * * The mere fact that an indictment, in a single count, charges that the defendants at the same time

received or aided in concealing property stolen from two different persons, neither renders it duplicitous and subject to a motion to quash, (*People v. Israel,* 269 Ill. 284, 109 N.E. 969) nor violative of the defendants' constitutional rights:''

In *People v. Israel,* cited in the above quotation, cases from many jurisdictions in accord with the view of the Illinois Court are cited.

This same rule is stated, as follows, in *Commonwealth v. Ault,* 10 Pa.Super. 651, 658:

''* * * One offense may be committed to the injury of two or more persons, and where several chattels, the property of different owners, are stolen, or feloniously received at the same time and place, the whole may be considered as one taking and embraced in one count of the indictment: *Fulmer v. Com.,* 97 Pa. 503; *State v. Hennessey,* 23 Ohio St. 339.''

The defendant contends that a contrary rule is applicable in Tennessee because of the holding in *Morton v. State,* 69 Tenn. 498. In Morton there was a two count indictment. The first count charged the larceny of property and money of Sam O'Brien and the larceny of property and money of Thomas Corbitt. The second count charged the receiving of the property and money of these same parties knowing same to have been stolen. In its brief opinion, the Court stated:

''There was conviction, and motion in arrest of judgment.

''The judgment should have been arrested.

''Each count avers two separate and distinct offenses.

"Every larceny includes a trespass to the person or property of the owner of the thing stolen. A larceny of the property of O'Brien was no trespass to the person or property of Corbitt, and *vice versa.*"

■ The opinion in Morton does not show whether the conviction was for larceny or for receiving stolen property. The facts do not appear in the opinion in that case, but, in *Phillips v. State,* 85 Tenn. 551, 3 S.W. 434, the facts of the Morton case are stated to be that Morton, O'Brien and Corbitt were all sleeping in the same room. The next morning, when O'Brien and Corbitt awakened, each discovered that his money, pocket-knife, and other property, as well as the defendant Morton, had disappeared during the night. These facts could only support a conviction for larceny, and not a conviction for receiving stolen property. Larceny and receiving and concealing stolen property are separate and distinct offenses. *Franklin v. State,* 202 Tenn. 666, 308 S.W.2d 417, *Peek v. State,* 213 Tenn. 323, 375 S.W.2d 863. Under the holding in the Franklin case, the defendant in the Morton case could only have been guilty of larceny and not of receiving stolen property. The same was held in *Parham v. State,* 78 Tenn. 498. As applied to a prosecution for receiving and concealing stolen property, the statement in Morton is contrary to the holding of this Court in *O'Brien v. State,* supra. Morton is not authority for the contention of the defendant in the present case.

While we do not have a charge of larceny involved in the present case, it is interesting to note that the Morton case and *Phillips v. State,* supra, which involved a charge of larceny, are not in accord with the overwhelming weight of authority in this country. In an annotation in 28 A.L.R.2d 1182, on the subject of single or separate

larceny predicated upon stealing property from different owners, the text writer, at 1184 of this annotation, states:

"In the vast majority of cases wherein the issue of single or multiple larcenies has arisen, or has been discussed, the courts have held or stated that the stealing of property from different owners at the same time and at the same place constitutes one larceny."

Decisions from 31 jurisdictions are cited as authority for this statement. At Page 1188 of this annotation, it is stated:

"Reasoning that every larceny includes a trespass against the property of the owner, and a trespass against the property of A is no offense against B's property, a few courts have held, or stated, although not in any recent cases, that the stealing of goods from two or more persons, even though occurring at one time and place, constitutes a distinct larceny as to the property of each person."

The Morton and Phillips cases, together with those from three other States and England, are cited as authority for this last statement.

■ In view of the recent holdings of this Court defining the essential elements of the offense of receiving stolen property knowing that it is stolen, we can only conclude that the indictment in the present case charges but one offense. The Trial Judge properly overruled the motion to quash the indictment and properly held that the State was not required to elect which of the items of stolen goods it would rely upon. Also, the Trial Judge did not commit error in overruling the motion in arrest of judgment.

 While certain of the assignments of error question the sufficiency of the evidence to support the verdict and judgment, we deem it unnecessary to make any detailed analysis of the proof. The testimony of the accomplices is amply corroborated. The proof clearly establishes that the defendant aided in concealing the goods at the farm. His constructive possession of the goods is amply demonstrated. See *Edmondson v. State,* 151 Tenn. 214, 268 S.W. 881. As has been stated by this Court so many times, the credibility of the witnesses has been determined by the jury who saw and heard them testify. Here, the verdict of the jury approved by the Trial Judge has removed the presumption of innocence and raised a presumption of guilt. The evidence leaves no doubt in our minds as to the guilt of the defendant.

The assignments of error are overruled and the judgment of the Trial Court is affirmed at the cost of plaintiff in error.

## On Petition to Rehear

The defendant, through an attorney who was not counsel of record at the time we filed our original opinion, has filed a petition to rehear. In this petition it is asserted that the evidence is insufficient to sustain the conviction in that the testimony of defendant's accomplice, Blankenship, is not adequately corroborated. No authorities to support this contention are cited in the petition to rehear.

 In the recent case of *State v. Fowler,* 213 Tenn. 239, 373 S.W.2d 460, the Court pointed out that under the common law the testimony of an accomplice, if it statisfies the jury beyond a reasonable doubt of the guilt of the defendant, may be sufficient to warrant a conviction

although it is uncorroborated. In Tennessee, however, while we have no statute requiring corroboration, this Court has repeatedly held that a defendant may not be convicted upon the uncorroborated testimony of an accomplice. In Fowler, and in numerous other cases, this Court has held that:

"* * * slight circumstances may be sufficient to furnish the necessary corroboration of an accomplice." 213 Tenn. at 247, 373 S.W.2d at 463.

The rules with reference to the sufficiency of corroborating evidence were fully stated by the Court, speaking through the present Chief Justice, in *Stanley v. State,* 189 Tenn. 110, 116, 117, 222 S.W.2d 384, 386, from which we quote, as follows:

"* * * The sufficiency of corroborating evidence where the testimony of an accomplice is in the main depended upon, depends upon the particular facts of each case. The weight of this testimony, that is, of the accomplice, corroborating the accomplice are ordinarily questions for the jury to determine. 'That is to say, when the trial judge finds that there is some corroborative evidence, it is his duty to submit it to the jury for them to say, first, whether it is worthy of belief, and secondly, whether, if true, tended to connect the defendant with the commission of the crime charged. It is not necessary to show by independent proof a link between the accomplice's testimony and corroborative proof; when the proof claimed to be corroborative tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy a jury that the accomplice is telling the truth, it is sufficient. For this purpose, if the accomplice is corroborated as to some material fact or facts, the jury may from that

infer that he speaks the truth as to all.' Wharton's Criminal Evidence, Vol. 2, Section 754, page 1272.

"It is not necessary that the corroboration extend to every part of the accomplice's evidence. The same authority last above quoted from says.

" 'The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight, and entitled, when standing by itself, to but little consideration. Moreover, if the verdict is founded on slight evidence of corroboration conecting the defendant with the crime, it cannot be said, as a matter of law, that the verdict is contrary to the evidence.' Section 753, page 1271, *supra.*"

Much of the testimony of the accomplices relative to the part played by the defendant in arranging to store the stolen goods in an abandoned house on the farm where defendant kept his horses is corroborated by the testimony of the tenant on that farm. Also, the defendant in his testimony admitted he was with Blankenship on the evening before the goods were moved to the farm in the early morning hours of the next day. The defendant testified he was awakened at 4:45 A.M., and showed the others the way to this farm. At the time defendant did this he knew police officers had been to Blankenship's apartment with a search warrant looking for stolen property. In this connection, the defendant gave the following testimony:

"Q. On this first occasion when you saw him, (Blankenship) you learned that some police officers had broken into his apartment, is that correct?

"A. Yes, sir, later that night, that is correct, yes, sir.

"Q. Broke into his apartment with a search warrant?

"A. Yes, sir.

"Q. Calling for stolen property?

"A. Yes, sir."

As stated in *State v. Fowler,* supra:

"It is not the province of an appellate court to make an argument upon the facts in a case of this character or go into detail on the question of credibility of witnesses or slight discrepancies in their testimony."

█ The record fully supports the statement in our original opinion that the testimony of the accomplices is amply corroborated. On the proof in this record the jury was completely justified in finding that on the early morning of June 9, 1963 the defendant was a party to the receiving and concealing of stolen goods, knowing the goods to have been stolen and with the intent to deprive the true owner thereof.

After again reviewing the record in this case, we find other contentions made in the petition to rehear to be equally without merit. Therefore, the petition to rehear is denied.