(No. 29026.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JEFF LONG, Plaintiff in Error.

*Opinion filed November 21, 1945.*

MAURICE B. JOHNSTON, of Carlyle, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and ROBERT M. CRAIN, State's Attorney, of Centralia, for the People.

Mr. JUSTICE GUNN delivered the opinion of the court:

Defendant, Jeff Long, was found guilty in the circuit court of Marion county of the crime of receiving stolen property, the value of the property stolen being fixed at

$65. Motions for a new trial and in arrest of judgment were denied by the court, and defendant was sentenced to the penitentiary. There is no substantial difference between the parties upon questions of law, but the contention of defendant is that certain essentials of the crime have not been proved, and that on the whole the evidence does not establish his guilt beyond a reasonable doubt.

The facts are substantially as follows: In July, 1943, John Bourland purchased a Remington Automatic 20-gauge shotgun from defendant. The price was $62.50. Later, John Bourland disposed of his interest to his father, James Bourland, who owned the gun on February 1, 1944, when it was stolen. In February, 1944, defendant purchased this particular gun from Willard Martin, who, it developed, had been brought to the place of trial from the penitentiary. He paid Martin the sum of $15 and received a bill of sale.

The evidence shows defendant, Long, owned a Remington Automatic 20-gauge shotgun, which he had purchased in 1942 from a dealer. It was claimed to be like, in all respects, the shotgun stolen from Bourland, except as to the serial number. Some time after the shotgun was stolen Bourland went to the store of defendant and asked if anyone had sold a 20-gauge automatic shotgun, and defendant inquired if he knew the serial number. Bourland did not know the serial number, or at least did not give any, nor did he at that time describe any distinguishing marks on the gun. Later defendant was approached by an officer of the city of Salem, and refused to produce any gun unless upon a search warrant. He did not dispute having possession of a Remington shotgun, but before delivering it to the officers or to Bourland he demanded they give the number. They did not then give a serial number or other specific description of the gun. The search warrant, so the evidence shows, called for a 20-gauge automatic shotgun. When the search was made the officers were taken to a room in which there was a 20-gauge

automatic shotgun, and, as the defendant characterizes their actions, when he brought it out "they grabbed it and carried it out of there." In the conversation at the store he told the Bourlands he had paid $15, and they could have the gun if they could describe the correct serial number and pay him back the $15. There are a number of matters appearing in the record which require attention.

The principal errors assigned are: that there is no evidence proving the defendant received the property with knowledge that it had been stolen; that there was no proof of the value of the gun described as stolen; that the proof made by the State is confused by proof that the shotgun seized on search warrant, and offered as an exhibit in court, had never been the property of the Bourlands; and that all of the evidence of identification, receipt and value applied to a gun never owned by Bourlands, and had no tendency to prove the guilt of the defendant beyond a reasonable doubt.

It is elementary that, in the crime of receiving stolen property, knowledge that the property received is stolen must be proved beyond a reasonable doubt. (*People* v. *Grizzle,* 381 Ill. 278; *People* v. *Klapperich,* 370 Ill. 588.) This knowledge may be inferred if the property is purchased at far less than its value, or by circumstances tending to show guilty knowledge. (*People* v. *Rife,* 382 Ill. 588; *People* v. *Lanie,* 378 Ill. 320.) It is equally true that possession of property recently stolen does not of itself establish the crime. (*People* v. *Grizzle,* 381 Ill. 278; *People* v. *Lardner,* 296 Ill. 190.) And it is also necessary for the fixing of the punishment that the fair cash market value of the property be established by proof in the case. Ill. Rev. Stat. 1943, chap. 38, par. 492; *People* v. *Fognini,* 374 Ill. 161.

The evidence applying to proof of the different elements of the offense is very confused. Upon the question of the defendant's knowledge that the property described

in the indictment was stolen, the contention of the State is that the charge applied to the concealing of an automatic shotgun purchased from Willard Martin. An attempt was made to prove that Willard Martin had stolen the gun. He testified on behalf of the State and said he had purchased it from another person at a tavern for $9, and sold it to the defendant for $15, had given a bill of sale and received a receipt. The defendant, however, had owned for a considerable period of time, before Bourlands had purchased their shotgun from him, a gun of like description. His gun was of the same type and manufactured by the same people, the only difference he claims being in the serial number. He testified from a record in his possession, in which is given the number, the name of the dealer from whom purchased, and the type of weapons purchased and sold by him. Such a record is required by law to be kept. The assumption of the State is that the gun produced upon search warrant was the one which had originally been sold to the Bourlands and later stolen. The Bourlands, after the gun was produced upon search warrant, identified it as the one which they had formerly owned. The defendant testified from the records that the particular gun in question was one he had owned long before the Bourlands had ever acquired title to the other gun purchased from him.

The confusion thus existing probably came about from the following facts: When the Bourlands came into the store of defendant and asked him about a 20-gauge Remington automatic he told them to produce the number and he would produce the gun, and refused to permit them to see it unless they gave him the number. They did not then describe the marks upon which they later claim identification. Complaint was made to the police, and substantially the same answer was made to them, whereupon a search warrant was sworn out, which called for a 20-gauge automatic shotgun, and when such a gun was pro-

duced from an inside room at the store the police "grabbed it and carried it out," and it was later introduced in evidence as "Exhibit 1." The Bourlands identified it by a slight mark on the barrel, not having the serial number, which would be conclusive of its identity. The slight mark must be more or less present on any automatic shotgun, depending upon the amount of use. The defendant testified from the records that the gun identified as "Exhibit 1," and which has serial number 5805, was his personal property, having been purchased in 1942 from a certain named dealer; and that the gun he had purchased from Martin was still in the store in Centralia.

We are not impressed with the certainty of the identification made by Bourlands. No description of distinguishing marks was made until after the gun was seized upon warrant. No reference was made to a friction mark or a scratch upon the shoulder butt until after the gun had been recovered. And, in addition, the so-called identifying marks were of a kind which might be on any gun in use for a considerable period of time. No effort was made by the State to dispute that the defendant had a record of guns purchased, as required by law, or that two similar guns with different serials numbers were not in his possession.

If the gun identified in court in fact belonged to the defendant, and the other was still in the store in Centralia, there would be no proof of theft of "Exhibit 1," or the unlawful receipt of it. If the proof is assumed to relate to the gun claimed to still be in the store, and purchased from Martin, the State is in the position of having no proof that that particular gun belonged to the Bourlands since they have identified a different one. The People cannot prove receiving stolen property by identifying something not belonging to the complaining witness. The admission that the defendant purchased property from Martin by a bill of sale does not prove the offense, because

there is no proof he stole it. This confused state of the evidence apparently arises from the police assuming that any 20-gauge automatic shotgun found in the store would belong to the Bourlands, without any attempt to examine the record of purchases and sales required to be kept by the defendant, or to obtain therefrom any specific description from which the Bourland gun could be identified.

Most of the circumstances relied upon by the People to prove guilty knowledge are greatly limited in their effect by the dubious character of proof of the identity of the gun stolen. A contributing cause to this confusion lies in the fact that defendant required the Bourlands to give the serial number of the gun they claimed stolen. Not doing this, their description, furnished after examining the gun, apparently fitted a gun belonging to the defendant as well as to the gun that had belonged to them. This questionable identification affects the contention that the gun was purchased for less than it was worth. There is no showing of the market value of the gun purchased from Martin if the evidence relating to value applied to a gun belonging to the defendant personally. If the gun sold by Martin was not in court, the value found by the jury affected a gun that was not involved in the theft.

Even though we could assume the gun exhibited in court formerly had belonged to the Bourlands, there is no proof of market value of the date of receiving. Its cost in money and trade almost a year before appears; and the transfer of a half interest from the son to the father some six months previous to the theft also appears, but no evidence whatsoever is shown as to the market value on the day it was received. The defendant testified he purchased the gun in question from Martin for the sum of $15. Purchase price is not the equivalent of fair market value. And further, if this were evidence of fair market value it is not sufficient to convict the defendant of a felony, as the law requires the value to be over $15, to constitute a

penitentiary offense. (Ill. Rev. Stat. 1943, chap. 38, par. 492.) The failure to make this proof, together with the fact that the jury was possibly exhibited a gun concerning which there is no applicable evidence, makes this question especially vital, when the punishment under the law is made to turn upon value.

Further, the statute requires the receiving of stolen property to be for gain, or to prevent the owner from again possessing his property. The defendant did not deny he had an automatic shotgun in his possession. He admitted it to the officers. He refused to give it to the Bourlands unless they identified it by serial number; and he also told the officers if they produced the number he would produce the gun. We do not believe this requirement of the statute is violated by requesting a person, who claims his property is stolen, to identify an article, consisting of one of many of the same kind and appearance, and bearing serial numbers or distinguishing marks, for the purpose of identifying one from another, by giving such number or mark. Such request does not seem unreasonable under the circumstances, when made in good faith, and does not of itself show an intent of personal gain, or the depriving of the complaining witness of recovering the possession of his property.

It is likely the defendant was stubborn and overly insistent upon his rights in requiring a search warrant, and in requiring the serial number from the complaining witnesses, but insistence upon one's legal rights does not establish guilty knowledge. It sometimes happens people who have lost property are overly zealous in identifying as their own property that which can be safely identified only by number or other marks made to distinguish one out of many similar articles.

The confusion in identity, value and knowledge, in the manner pointed out above, causes us to have a reasonable doubt as to the guilt of defendant of the offense described

536

in the indictment. The facts in the case can be properly established only by a new trial.

The judgment of the circuit court of Marion county is, accordingly, reversed and the cause remanded for a new trial.

*Reversed and remanded.*