(No. 34616.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM TODARO *et al.,* Plaintiffs in Error.

*Opinion filed September 18, 1958—Rehearing denied Nov. 14, 1958.*

Jacoby, Patton and Manns, of Alton, for plaintiffs in error.

596

LATHAM CASTLE, Attorney General, of Springfield, and DICK H. MUDGE, JR., State's Attorney, of Edwardsville, (FRED G. LEACH, LOUIS B. SUNDERLAND, and MERLE C. BASSETT, of counsel,) for the People.

Mr. JUSTICE DAVIS delivered the opinion of the court:

Defendants Sam and John Todaro, brothers, were convicted of receiving stolen property of the value of $450, by a jury in the circuit court of Madison County. After their post-trial motions had been overruled, the court sentenced each defendant to serve a term of not less than one nor more than three years in the penitentiary.

The evidence for the People established the facts hereafter related. A service station owned and operated by Carl Brass and located one mile north of the city of Alton was burglarized during the night of February 15, 1957, and an adding machine was stolen. On March 6, 1957, it was recovered by the Alton police department from John and Sam Todaro, who owned and operated a tavern in Alton. At the trial, Carl Brass, the owner of the machine, identified it as his property. During the early morning hours of February 22, 1957, Hunter's Horn Tavern, located about 4 miles north of Carrollton in Greene County, was burglarized and over 200 bottles of liquor were taken. Most of this property was surrendered upon demand to the Alton police department by the defendants on March 7, 1957.

Catherine M. Wright, who owned and operated Hunter's Horn Tavern with her husband, B. A. Wright, testified that she made an itemized inventory of the stolen liquor in the presence of the sheriff of Greene County on the day of the burglary and that she and her husband had paid $650.46 for it. Exhibits consisting of the inventory showing the cost of each item and an adding machine tape reflecting such amounts and the total thereof were received in evidence without objection.

Charles Melton, 18 years of age at the time of the trial, testified that he was convicted of burglary and placed on probation in 1956; that he met the defendants, cashed checks and was a patron in their tavern during the latter part of 1956; that the Todaros told him they wanted an adding machine, so he "got them one"; that the adding machine produced at the trial was the one stolen by him from the Brass filling station; that after he had taken it he borrowed money from the defendants to repair it, and defendants thereafter paid him $10 or $15 for the machine; that he did not tell them where he got it; and that both before and after its delivery, the defendants told him that if he wanted to make "some real money—to get whiskey."

Melton further testified that late in the evening of February 21, 1957, he and Charles Foster went to the Todaro tavern at which time both defendants were present; that he told John Todaro he intended to get the whiskey that night and needed gas for his car; that John Todaro gave him $2 for gas after declining to accept some Eagle Stamps which the witness offered him, and asked them if they intended to get the whiskey out of town; that after he and Foster left the Todaro tavern they drove directly to the Hunter's Horn Tavern where they broke into, entered the building and secured the liquor which they took to witness's apartment in Alton; that they separated and listed the various items and on the evening of February 22, met at the Todaro tavern; that Sam Todaro came in at about 11 o'clock; that after the tavern closed Melton and Foster showed Sam and John Todaro the list of the liquor; that the defendants asked "if it was safe" and were told that "it was got about 20 miles from here out of Alton;" and that the defendants then paid Melton and Foster $175, and thereupon they all went to breakfast together. Melton also stated that Sam Todaro came to his apartment about noon of the same day, at which time he helped Todaro

load the liquor in the latter's car and that neighbors lived nearby.

The testimony of Charles Foster, Jr, ., age 29, corroborates Melton's statements as to all transactions with the defendants on February 21, 22, and 23. Foster further testified that he and Melton took 205 bottles of liquor but kept 14 for their own use. When arrested on March 3, some of the liquor was found in his car.

The testimony of the Alton police officers shows that the defendants were first contacted on March 6 at which time the adding machine was recovered. John Todaro then denied that he bought any stolen whiskey or that he purchased any property from Foster. On March 7, at about 8 P.M., police sergeant Olson Smothers, and other officers, went to the Todaro tavern. Both defendants were present and were advised that Foster and Melton had confessed the burglary of the Hunter's Horn Tavern and the sale of liquor to them. Defendants then said they had some of the liquor and would get it, and were instructed to bring it to the police station. Later that evening they brought in a load of liquor which was checked and labeled by the officers. About midnight the officers returned to the tavern and told Sam Todaro that all of the stolen liquor had not been delivered and requested him to produce it. At noon the following day the officers again came to the tavern and Sam Todaro told them that John had gone for the balance of the liquor and would be back soon. Shortly thereafter John returned in his car with certain bottles of whiskey which, in the company of the police officers, he delivered to the police station. A total of 246 bottles of liquor were turned over to the police by the defendants.

John Todaro, 43 years of age, testified that he had been in the tavern business with his brother Sam for about a year; that he had known Melton for 7 or 8 months and frequently lent money to him and took various articles of personal property as collateral; and that all loans had been

repaid except one for $15 secured by the adding machine which had been in his possession for 6 to 8 weeks prior to February 22. He denied that he purchased the machine and claimed that he held it only as collateral. He testified that on February 21 or 22, Melton and Foster told him they had purchased the stock of liquor of a club which went out of business and offered to sell it to him; that about 10 P.M. on February 22, they showed him a list of this liquor; that he agreed to buy it for $175 and paid them at that time; that Sam was not present; that he sent Sam to get the liquor the following morning; that he had not consulted Sam prior to the purchase; and that he "just glanced" at the list, figured there was $350 worth of whiskey there, and offered to buy it for $175. He further testified that Sam stopped at the tavern briefly before the closing hour and after Melton and Foster had gone, and they agreed to meet later at a restaurant; that en route he ran out of gas and had to call Sam to push his car to a filling station across the street from the restaurant where they joined Sam's wife and Mr. and Mrs. Floyd Johnson; and that he told Sam nothing of the purchase of the liquor while they were then together.

Sam Todaro, age 35, worked at the Wood River plant of the Standard Oil Company, Monday through Friday of each week, and was interested in the tavern as part owner. He testified that he first learned of the purchase of the liquor about 8 A.M. on Saturday, February 23, when John telephoned him at his home and requested him to pick it up on his way to the tavern, but that John did not tell him how much he paid for the whiskey or the name of the person from whom it was purchased; and that he drove to Melton's apartment where Melton helped him carry out the whiskey and load it in his car. The proof established that there were four boxes and one large blue metal container filled with assorted bottles; that the size of the container made it impossible to close the trunk of his auto-

mobile; that he drove by main travelled streets to the front of the tavern where he arrived at about 9:30 A.M.; and that he carried the liquor into the building and stored it in the presence of various customers. He further testified that on the evening of February 22, he, his wife, and Mr. and Mrs. Johnson drove to St. Louis where they went to a movie; that they did not return to Alton until after 12:30 A.M. when he stopped at the tavern and told John to meet them at the restaurant. His testimony as to subsequent events coincided with that of his brother. Sam Todaro denied that he had seen Melton on the night of the 21st or 22nd, or that he ever suggested that Melton get whiskey. His testimony as to his activities and whereabouts on the evening of the 22nd and early morning hours of the 23rd was corroborated by his wife, Lorraine, and by Mr. and Mrs. Johnson, all of whom testified for the defendants. On cross-examination Sam Todaro stated that he did not think it strange that Melton would have that much whiskey and that he did not ask Melton where he got it. However, he admitted that if he were buying liquor under the circumstances related by his brother, he would be suspicious and would want to know the source of the whiskey.

Six witnesses, including two of the police officers who were witnesses for the People, testified that the reputation of the defendants for honesty and integrity in the community in which they lived was good.

Defendants argue that there is no evidence in the record to support the jury's finding of the value of the property since the only proof is Mrs. Wright's testimony concerning the cost of the liquor rather than its fair cash market value at the time it was received. In this type case it is necessary to establish the value of the property in order to fix the grade of the offense. (*People* v. *George*, 398 Ill. 318.) The statute under which this indictment was brought provides that if the value of the property does not exceed $50, the

offense is punishable by fine and jail sentence, otherwise by imprisonment in the penitentiary. (Ill. Rev. Stat. 1955, chap. 38, par. 492.) In order to warrant conviction of a felony and consequent penitentiary sentence it was incumbent on the People to prove that the property had a value in excess of $50. Where such proof is required, the criterion is the fair cash market value of the property and not its cost. (*People* v. *George*, 398 Ill. 318; *People* v. *Long*, 391 Ill. 529; 32 Am. Jur. sec. 139, pp. 1051-52.) In *People* v. *George*, the property in question was a watch and a pen-and-pencil set which the owner testified had been given him by his son, who had paid $267.50 therefor, and we held that such proof was insufficient to support a finding of value since the testimony failed to disclose the condition of the watch, the quality, or whether it was modern or obsolete, thus affording no basis for a finding of value at the time of the alleged offense. While the *George case* is authority for the proposition that proof of cost alone does not establish the fair cash market value at the time and place of the receipt of the property, the opinion clearly indicates that cost, together with other proof, may afford the basis for a valid finding as to value. (Cf. *People* v. *Servilli*, 364 Ill. 190.) In *State* v. *Handler*, 142 Kan. 455, 50 P.2d 977, the court held that evidence of the price paid for the property a short time before by its owner, the amount of use to which the property had been subjected, together with evidence that the receiver of the stolen property paid the thief a greater sum than that necessary to constitute grand larceny, was sufficient to sustain a conviction. The court observed that the total testimony was sufficient to establish a market value of more than $20, the amount required to constitute the offense of grand larceny in that jurisdiction.

In the case at bar the evidence establishes that liquor, recently purchased at a cost in excess of $600 and held for immediate resale by the owners, was stolen on February 22,

and sold the same or following day to the defendant John Todaro who, by his own admission, paid $175 for it, while estimating its minimum actual worth to be $350. This liquor was bottled and was subject to neither deterioration nor obsolescence. Under the circumstances, we cannot state that the jury was unwarranted in finding that the liquor had a greater value than $50. Thus, the requirement that the proof establish the grade of the offense was met.

Defendants also urge that the proof does not sustain the allegation that the liquor was the property of Catherine Wright and B. A. Wright, in that the liquor license for the tavern had been issued in the name of B. A. Wright. Mrs. Wright testified that she and her husband owned and operated the tavern from which the liquor was stolen; and that money belonging to them was used to purchase liquor for the tavern. This testimony was not controverted and the contention that Catherine Wright had no proprietary interest in the stolen property is without merit.

Defendants also contend that the evidence as a whole does not establish their guilt beyond a reasonable doubt. They emphasize the testimony of the alleged alibi witnesses, the proof of good character, the circumstances under which the goods were actually delivered to Sam Todaro, and that the conviction of the defendants rests largely upon the testimony of accomplices. We have consistently held that the uncorroborated testimony of an accomplice, if it satisfies the jury or court beyond a reasonable doubt, is sufficient to sustain a conviction of a felony. (*People* v. *Nitti,* 8 Ill.2d 136; *People* v. *Johnston,* 382 Ill. 233; *Gray* v. *People,* 26 Ill. 344.) While we recognize that such testimony is attended by infirmities which require caution in relying upon it alone, we have held that these considerations go to the weight of the evidence and credibility of the witnesses, and that if the jury or trial court is satisfied by the testimony of an accomplice that the defendant is guilty beyond a reasonable doubt, the judgment should not be set aside unless

it is apparent to the reviewing court that such degree of proof is lacking. *People* v. *Rudnicki,* 394 Ill. 351; *People* v. *Jurek,* 357 Ill. 626.

In the case at bar, the conviction of the defendants does not rest solely upon the testimony of Melton and Foster. The defendant John Todaro admitted that he purchased the property under circumstances which were, to say the least, suspicious. Melton was known to be young, indigent, and unemployed. He frequently borrowed money from John Todaro. The liquor was purchased at Todaro's own figure, which was admittedly half its estimated actual value. When finally delivered, it was not in the original cartons, but in boxes and a large metal container. Sam Todaro, while admitting that a purchase made under the circumstances outlined by his brother would have aroused his suspicions, professed no surprise when persons, not regular dealers in liquor, delivered 130 or 140 bottles to him in this unorthodox manner. Though John Todaro said he had already purchased and paid for the liquor before he spent an hour with his brother between 1 and 2 A.M. on February 23, he testified that he said nothing to Sam about it, but called him on the telephone six hours later and advised him of the purchase, without stating the seller's name or the purchase price. However, Sam thereupon went directly to Melton's apartment and transported the liquor from there to the tavern. These facts and circumstances, established by evidence other than the testimony of the accomplices, undoubtedly impressed the jury and cannot be ignored by this court. The fact that Sam Todaro received the liquor in daylight and drove through the streets to the tavern, where he unloaded it, is stressed by defendants. While this shows a lack of secrecy and tends to negate guilty knowledge, John Todaro's production of some of the liquor from an undisclosed location other than the tavern after a second demand by the police for its delivery and the surrender of more liquor than that involved in the

purchase in question is not consistent with innocence and raises an opposite inference.

The claimed defense of an alibi relates only to the defendant Sam Todaro, and covers only that period of time during which the liquor was purchased and paid for. If full credence is given to the testimony of the alibi witnesses, it establishes only that Sam Todaro was not present during negotiations for the purchase of the stolen property. However, the crime charged is the buying, receiving, and concealing of stolen property. It is undisputed that Sam Todaro actually received the liquor under the circumstances heretofore related. Alibi is an affirmative defense and in order to be legally effective it must cover the entire time during which the crime is alleged to have been committed. (*People* v. *Van Dyke*, 414 Ill. 251; *People* v. *Durand*, 321 Ill. 526; *People* v. *Phelps*, 388 Ill. 618.) The asserted alibi in this case negates neither the testimony of Melton and Foster as to the original negotiations prior to the burglary of the tavern, nor that the goods were actually received by Sam Todaro. Viewed in its proper perspective, it is not an alibi and constitutes no defense to the crime charged.

Defendants further argue that the indictment charges two distinct felonies upon which they were compelled to proceed to trial; that the proof did not sustain the charges; and that their constitutional rights were violated. The indictment alleges that the defendants, on the 23rd day of February, 1957, "feloniously and unjustly, for their own gain, and to prevent the owner from again possessing his property, did buy, receive and aid in concealing" the adding machine of Carl Brass and the liquor of Catherine Wright and B. A. Wright, knowing such property to be stolen. The mere fact that an indictment, in a single count, charges that the defendants at the same time received or aided in concealing property stolen from two different persons, neither renders it duplicitous and subject to a motion to quash, (*People* v. *Israel*, 269 Ill. 284,) nor violative of the

defendants' constitutional rights. While the adding machine was received prior to the receipt of the liquor, the defendants were guilty of "aiding in concealing" the machine on the date charged. The statute in question makes criminal the act of concealing as well as the acts of buying and receiving stolen property. Accordingly, we find that the proof sustained the charges laid in the indictment.

Defendants assigned as error the giving and refusal of certain instructions but failed to set forth all of the instructions in the abstract of record. Error cannot be predicated upon the giving, refusal or modification of instructions unless they are set forth in the record and made a part of the abstract of record, and unless it is shown at whose request the instructions were given. *People v. Harvey*, 12 Ill. 2d 88; *People v. Husband*, 4 Ill.2d 451; *People v. Rogers*, 413 Ill. 554.

Notwithstanding the testimony as to their prior good character and reputation, we believe that the evidence was sufficient to establish the guilt of the defendants of the crime charged beyond a reasonable doubt, and under such circumstances their conviction will not be set aside because of proof of previous good character. (*People v. Arbuckle*, 413 Ill. 441; *People v. Anderson*, 239 Ill. 168.) The judgment of the circuit court of Madison County is affirmed.

*Judgment affirmed.*