(No. 36872.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THEODORE SMOLAREK *et al.,* Plaintiffs in Error.

*Opinion filed Sept. 28, 1962.—Rehearing denied Nov. 29, 1962.*

BELLOWS, BELLOWS & MAGIDSON, of Chicago, for plaintiffs in error.

WILLIAM .G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and WILLIAM L. CARLIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Theodore Smolarek, Edmund Pasinski, and Frank Vojcak were tried by the court without a jury for the crime of larceny. The trial judge found all three guilty and found the value of the property taken to be $348. Vojcak was granted probation. Smolarek and Pasinski were sentenced to the penitentiary for terms of from five to eight years and from two to five years, respectively. Smolarek and Pasinski have prosecuted this writ of error, their sole con-

tention being that the State did not prove that the value of the property taken exceeded $300. At the time of the offense, larceny of property having a value of less than $300 was a misdemeanor, while larceny of property of greater value was a felony punishable by imprisonment in the penitentiary for a term of not less than one year nor more than ten years. Ill. Rev. Stat. 1959, chap. 38, par. 389.

The evidence is undisputed that on the night of March 6, 1960, three men identified as the defendants entered a cable yard maintained by the Commonwealth Edison Company and used for the parking of trucks and the storing of materials. They went to the loading dock running parallel with the building located there. One of the men crawled over the gate, which is in a fenced enclosure at the end of the building. He went to a rack on which were stored coils of copper wire and moved several coils from the rack to a position just within the enclosure gate. He then hoisted three of the coils to the top of the gate to the other men on the outside, who lowered them to the dock. The first coil was put on a skid, and the other two were laid just outside the gate. A fourth coil was being hoisted to the top of the gate, but it was suddenly lowered back inside the gate, and the man inside hurriedly climbed over the gate, and he and the other two men ran toward their car, which was parked nearby. They were apprehended by special agents of the company, who had been observing their movements, and were thereafter arrested.

An inspection of the premises following the crime revealed that seven coils of wire had been removed from their place on the rack. These seven coils were placed on a skid and kept separate from the other coils. All seven were coils of No. 6 copper wire and had been delivered to the company on March 4, 1960. One coil of No. 6 copper wire was brought into the courtroom, marked People's exhibit No. 8, and was identified by several witnesses for the People as one of these seven coils.

The only testimony as to value was given by James L. Waddington, who had been an employee of Commonwealth Edison Company for 31 years and who at the time of the trial was assistant supervising storeroom storekeeper at Chicago Central for the company, in which capacity he initiated orders for all material, and engaged in the buying and selling of copper wire. He was shown People's exhibit 8, and was asked if, based upon his experience in the buying and selling of copper wire and upon his examination of the exhibit, he had an opinion as to the fair cash market value of that coil and similar coils of copper wire on March 6, 1960, in Chicago. No objection was made to the qualifications of the witness to give his opinion, and defense counsel expressly acknowledged that it was proper to ask the witness the fair cash market value of the particular coil, but objected to the question insofar as it included similar coils. The objection was overruled, and the witness testified that the cash value of a coil of copper wire was approximately $87.

On cross-examination Waddington testified that his company had paid $87 per coil, that it had been delivered on March 4, 1960, that it had been ordered on January 25, 1960, upon the basis of bids submitted.

Defendants contend that the evidence of value is insufficient for two reasons; first, because the witness based his testimony solely upon the price paid by the company and not upon the actual market value as of the date of the crime, and second, that there is no evidence that all the coils were identical in value.

The amount of $87, which Waddington testified to be the fair cash value of the coil of wire was the same as the price paid for it by the company. Defendants, relying principally upon *People v. Todaro*, 14 Ill.2d 594, and *People v. George*, 398 Ill. 318, contend that Waddington's testimony was based upon the cost of the wire to the company and was therefore insufficient upon which to base a finding

as to the fair cash value of the property on the date in question. Waddington's testimony on cross-examination was somewhat equivocal and ambiguous, and it is not clear whether his testimony as to value was based solely upon the cost price to the company. However, even accepting defendant's interpretation of the evidence that the value testimony was based solely upon the price paid for the wire by the company, it does not follow that the evidence in this case was insufficient to sustain the finding. The case of *People* v. *George,* 398 Ill. 318, relied on by defendants, involved the larceny of a watch. The only evidence as to value was the testimony of the owner as to the cost of the watch. We held that, in the absence of any evidence as to the condition of the watch, its quality, or whether it was of a modern or obsolete type, the cost was no criterion of its actual fair cash market value at the time of the theft. In *People* v. *Todaro,* 14 Ill.2d 594, however, we recognized that the evidence of the price paid for liquor by the owner shortly before its theft together with evidence of the price paid by the receiver of stolen goods was sufficient to sustain a finding as to value.

In the present case, the wire was delivered to the company two days before the crime and was paid for at the time of delivery. The price had been established on the basis of bids slightly over a month previous. Obviously obsolesence is no factor. There is nothing in the record to show that the value of the wire was anything other than $87 per coil. The evidence in the record as to value was competent, and, in the absence of evidence showing any lesser value, was sufficient to sustain the finding.

Defendants also urge that the evidence as to value is insufficient because it was not proved that People's exhibit 8 was one of the four coils which the defendants were seen lifting over the fence, nor was it shown that all of the coils were identical in weight. The record clearly establishes that People's exhibit 8 was one of the seven coils that had been

taken from their place on the rack, that all seven coils were of the same type of No. 6 wire, and that all had been delivered to the company on March 4, 1960. While there was testimony that there might be some slight variation in the weights of the different coils, the specifications called for each coil to weigh 150 pounds. In the absence of evidence of any significant variation in the weight or value of the coils, we believe that the trial judge was justified in considering $87 as the value of each coil and in finding the value of the property taken to be $348. From our review of the case, we find that the evidence is sufficient to sustain the finding as to value.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*