**People of the State of Illinois, Plaintiff-Appellee, v. Albert George Sanders, Defendant-Appellant.**

Gen. No. 66–21.

Second District.

October 11, 1966.

Charles L. Hughes, of Aurora, for appellant.

William R. Ketcham, State's Attorney of Kane County, of Geneva (Gene Armentrout, Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court of Kane County. On October 6, 1965, a jury returned a verdict finding the defendant guilty of theft of property having a value of $8,239.03. On November 8, 1965, judgment on the verdict was entered and defendant was sentenced to a term of not less than one nor more than three years in the Illinois State Penitentiary. All post-trial motions of defendant were denied and his plea for probation was denied.

█ Defendant perfected his appeal and filed with this court the record and abstract of record and brief. The State did not file an appellee's brief. The question arises as to whether the State's failure to file a brief requires reversal of the judgment or whether this court may proceed and consider the case on its merits. From a review of the cases, both civil and criminal, it appears that it is within the discretion of the Appellate Court to either reverse the judgment without consideration of the merits or to proceed and consider the case on its merits. People v. Riggs, 296 Ill App 136, 138, 15 NE 2d 914. In The People v. Thomas, 7 Ill2d 278, 131 NE2d 35, at pages 282 and 283 the Supreme Court said:

> "In his reply brief, defendant asks that the People's brief be stricken because it was not filed within an extended period of time fixed by order of this court. We find, however, that for good cause shown, a further order was entered allowing the People's unopposed motion for leave to file briefs instanter. Such action is within the discretion reserved to this court under Rule 41, (Ill Rev Stats 1953, chap 110, par 259.41,) and will not be disturbed in the ab-

sence of any showing that defendant was prejudiced thereby. *Furthermore, we are constrained to remark that even the complete failure of the People to file a brief in this cause could not, and would not, have resulted in a reversal of the judgment of conviction.*" (Emphasis added.)

While we condemn the laxity of the State in failing to file a brief herein, we do not consider that the ends of justice would be served by reversing the jury's verdict and the judge's sentence merely because of such circumstances in the case at bar.

Defendant was charged in the indictment with theft in that he "knowingly obtained unauthorized control over stolen property, to-wit: 21 television sets and two stereo sets having a value in excess of $10,000.00, knowing said property to have been stolen by another, and knowingly concealed said property in a manner and with the intent to deprive the owner . . . permanently of the use and benefit of such property."

The State's case rests largely on the testimony of one Charles Mosely. Mosely had been an employee of the defendant, who operated a television antenna service in Aurora. Early in June, Mosely ceased working as a full-time employee of the defendant and started working at the warehouse which he subsequently burglarized.

It appears that on June 12, 1965, Charles Mosely and Robert Huett burglarized a warehouse in Aurora and stole two television sets. On the following evening the same two individuals returned to the warehouse with a truck stolen by them and again burglarized the same warehouse. This time they took 21 television sets and two stereo sets. The fruits of the second burglary were stored in the garage of Edward Mosely, the brother of Charles Mosely.

The following day Charles Mosely testified he met the defendant at a restaurant in Aurora. Defendant was sitting at the bar when Mosely came in and the two moved

425

to a table where Mosely testified the defendant said he had heard of the burglary and wanted to know if Mosely wished to sell the sets. On June 16, 1965, Mosely called the defendant and told him that his brother insisted that he move the television sets and inquired if he could store them in a barn on defendant's farm. Mosely said that John Rost, a friend of the defendant's, rented a trailer which he turned over to Mosely for the purpose of transporting the television sets to defendant's farm. On that night Mosely made two trips to defendant's farm transporting the stolen merchandise. The first trip was made with his brother, Edward, and the second with Robert Huett.

They arrived at the farm on the second trip after midnight on the morning of June 17, 1965. Because of the darkness, the defendant, who was at the farm, arranged an extension cord and held a light while Mosely and Huett unloaded the merchandise and stored it in the barn. After the trailer was unloaded, Sanders secured some canvas to cover the crates. The three then discussed whether or not it would be feasible to move the crates up into the loft of the barn. It was agreed that the opening was sufficient and they would do it the next day. Later that morning John Rost stopped at defendant's farm and the two drove to downtown Aurora where a policeman started to approach the car. Sanders got out of the car and started to walk away, but the policeman apprehended him and he was placed under arrest.

The defendant's version of what occurred is that on June 16, 1965, Mosely called him and asked if he could store "some stuff" in his barn, to which request he assented. It was not until Mosely and Huett were unloading the stolen merchandise that he realized what it was. He claims after finding out what Mosely was storing, he spent a wakeful, fitful night, and that when his

friend, John Rost, picked him up on the morning of June 17, they were on their way to the Aurora Police Station to advise the police of the circumstances; that on the way he was arrested. Defendant never explained why he did not call the police from his home, nor was there any satisfactory explanation of why, upon the approach of a policeman, he left the car and started walking away. Defendant also denies the substance of the conversations which took place in Aurora and at his farm while the merchandise was being placed there.

Defendant has been convicted of knowingly obtaining unauthorized control over 21 stolen television sets and two stereo sets having a value of excess of $8,000. It is undisputed that the stolen merchandise was found stored in a barn on the farm where defendant lived. Defendant admits that he was present when part of the merchandise was stored there, that he knew the merchandise was stolen and he assisted the two men who had stolen it as they stored it in his barn. Defendant contends that this evidence was not sufficient to sustain a conviction.

■■ We have examined the cases cited by the defendant in his brief and find them to be clearly distinguishable from the facts before us. Defendant in permitting the stolen merchandise to be stored in his barn and assisting the original thieves in storing the stolen merchandise committed all the essential acts necessary to constitute violation of section 16–1(d) of the Illinois Criminal Code of 1961. There is ample evidence in the record to justify finding the defendant guilty. The People v. Todaro, 14 Ill2d 594, 153 NE2d 563; The People v. Jurek, 357 Ill 626, 630, 631, 192 NE 686; People v. Nunn, 63 Ill App2d 465, 472, 473, 212 NE2d 342.

■ The next question is as to the sufficiency of this evidence inasmuch as the State's case rests largely on the testimony of Charles Mosely, an admitted thief. As the defendant contends, it is uniformly held that the

testimony of an accomplice must be received with grave suspicion and acted upon in great caution, and in weighing such testimony, it is necessary to consider the motives of the witness in giving such testimony. The People v. Todaro, supra, at page 602; The People v. Rendas, 366 Ill 385, 399, 9 NE2d 237.

██ ██ Defendant asserts the State extended favors to Charles Mosely to induce him to testify as he did. This assertion appears negated since the record indicates Mosely has been sentenced to the penitentiary. The principal conflict in the testimony of the defendant and that of Charles Mosely is as to the subject matter of the conversations that took place between them in the restaurant in Aurora and at defendant's farm the night he held the light so Mosely and Huett could see where to store the merchandise. As to whether Mosely or Sanders truthfully testified as to the content of these conversations was for the jury to determine. The jury found nothing in the testimony of Mosely so improbable, unsatisfactory or reasonably doubtful to cause it to believe that the State had failed to prove the case beyond a reasonable doubt. This court should not set aside this verdict unless it is apparent to us that such proof is lacking. We find no reason to disturb the finding of the trial court. The People v. Todaro, supra, page 602.

██ Much of the testimony of Mosely is corroborated by the testimony of the defendant himself. The weight of the evidence and credibility of the witnesses are for the jury to determine and in the light of this record we will not substitute our judgment on those questions. The People v. Todaro, supra.

 As an alternative theory, the defendant argues that the sentence of not less than one nor more than three years in the penitentiary is too severe and was an abuse of the discretion of the trial court and, under the circumstances, probation should be granted by

this court. There is no question but that under the powers granted the reviewing court by c 38, section 121-9 (b-4), Ill Rev Stats (1965) we have the authority to reduce the sentence in a proper case. This section of the statute does not appear to authorize this court to grant probation. However, before the Appellate Court will interfere with a sentence of the trial court which has had the opportunity to observe the witnesses and hear the testimony, it must be manifest from the record that the sentence is excessive and is not justified by any reasonable view which may be taken of the record. People v. Hobbs, 56 Ill App2d 93, 98, 99, 205 NE2d 503. Where it is contended that the punishment imposed in a certain case is excessive, though within the limits imposed by the statute, this court will not disturb that sentence unless it clearly appears that the sentence constitutes a clear departure from fundamental law and its spirit and purpose and that the punishment is manifestly excessive and disproportionate to the nature of the offense. The People v. Taylor, 33 Ill2d 417, 424, 211 NE2d 673 (1965). We find the punishment imposed upon the defendant was not manifestly excessive.

The judgment of the Circuit Court of Kane County is affirmed.

Judgment affirmed.

MORAN, P. J. and DAVIS, J., concur.