Haavkins, J.,
delivered the opinion of the Court.
The defendant was indicted in the Circuit Court of Jefferson County, at its August Term, 1865, for the murder of one John Thornhill.
The indictment alleges the offense was committed in the County of Jefferson, on the 1st day of June, 1865.
To this indictment the defendant filed a special plea in bar, in which he alleges that on the 1st day of June, 1865, in the Military District of East Tennessee, he was a Lieutenant in Company B, Ninth Tennessee Cavalry, and as such, in the military service of the United States, and subject to the jurisdiction of the Military Courts and General Courts-Martial established by the laws of the United States, for the punishment of offenders against law who were in the military service of the United States; and that there was then and there existing an insurrection and civil war in said District; and that, on the 5th of October, 1865, in obedience to a general order, dated at Chattanooga, on the 19th of September, 1865, a General Court-Martial was convened and sitting at Chattanooga, for the Military District of East Tennessee, and the defendant was then and there arraigned and put upon his trial upon charges and specifications charging said defendant with the same identical murder with which he is charged in this indictment; and said civil war and insurrection then continuing to exist in said District, and said defendant having pleaded not guilty to said charges and specifications, after maturely considering the evidence, *148 said Court found the defendant not guilty, and thereupon did honorably acquit him of said charge, &c.
To this plea the Attorney General filed a demurrer, upon -which no action appears to have been taken by the Court; it must, therefore, now be regarded as having been abandoned.
The Attorney-General for the State filed a replication to the plea, in which it is alleged there is no record of said supposed acquittal; and if any such was had, the same was not had during the continuance of any war, invasion or rebellion, and therefore the same was unathorized, illegal and void; and if any such trial was had, the same was had and obtained by fraud and collusion with the military authority, and that all the proceedings of said Military Court were for the purpose and intent of shielding the defendant from the punishment justly due his crime, &c.
To this replication the defendant filed a demurrer, which was sustained by the Court, and the Attorney-General allowed to file another replication, which he done, traversing the allegations of the plea. An issue was made and the cause' submitted to a jury, who rendered a verdict in favor of the defendant. Thereupon the Court pronounced judgment that the defendant be discharged, &c.; from which the Attorney-General for the State has appealed in error to this Court.
Various and interesting questions have been presented, in elaborate and able arguments; but, in the view we have taken of the case, the main question, and the one which, in our opinion, is decisive of the case, arises upon the demurrer of the defendant to the replication filed by the Attorney-General. The demurrer reach *149 ing back to the first defect in pleading, it is insisted the matters alleged in the plea, taken as true upon the demurrer, do not constitute a bar to this prosecution.
The plea in substance, is, that the defendant, while in the military service of the United States, and subject to the articles of war, was charged, tried and acquitted of the same murder with which he is charged in this indictment, by a Court-Martial, convened under the laws of the United States, during the existence of a civil war and insurrection.
The counsel for the defendant relies upon the 30th section of an Act of Congress, approved March 3d, 1863, as conferring jurisdiction upon the Court-Martial to try and punish the defendant for the crime of murder. The provisions of which are as follows, to-wit: “ That in time of war, insurrection, or rebellion, murder, assault and battery with intent to kill, manslaughter, mayhem, wounding by shooting with intent to commit murder, robbery, arson, burglary, rape, assault and battery with intent to commit rape, and larceny, shall be punishable by the sentence of a General Court-Martial, or Military Commission, when committed by persons who are in the military service of the United States and subject to the articles of war; and the punishment of such offenses shall never be less than those inflated by the laws of the State, Territory or District in which the offense may have been committed.”
Upon the part of the State it is insisted that Congress has no power, under the Constitution of the United States, to declare murder a crime, or to provide for the punishment of a person guilty of murder under *150 the laws of a State; and therefore, the Court-Martial had no legal power to try or punish the defendant for the crime. We do not deem a settlement of this question necessary to a determination of this cause; but we may, nevertheless, express the opinion that the provisions of this section fall clearly within the provisions of the Constitution conferring upon Congress the power “to make rules for the government of the land and naval forces,” and “to make all laws which shall he necessary and proper for carrying into execution the foregoing powers,” (Article 1, Section 8,) not as a statute creating or defining crimes, or to enforce the laws of the State, or providing for the trial and punishment of offenders against such, laws, hut as a means necessary and proper for the government of the military forces of the United States, and the preservation of good order and discipline in the army.
Then, assuming, as we do, that Congress may provide for the punishment of any or all acts, criminal or otherwise, which it may deem prejudicial to the good order and discipline of the army, and in such manner as it may deem proper, when committed by persons in the military service of the United States, and subject to the articles of war, how does this case stand ? The laws of Tennessee define murder, declare it a crime, and provide for its punishment. The power of the State to pass such laws is unquestioned.
The United States have provided for the 'puishment of murder, and other offenses, when committed by persons in the military service of the United States and subject to the articles of war, during the existence of *151 a civil war, insurrection or rebellion; and this, we think, was in the exercise of a power conferred by the Constitution of the United States.
The Government of the United States, and that of the State of Tennessee, are both, within its sphere, separate and distinct sovereignties; each may and has provided for the punishment of offenses against its own laws; but neither can, by merely providing for the punishment of offenders against its laws, deprive the other of the right or the power to punish offenses against its laws; and the mere fact that the same act may be an offense against the laws of both, can make no difference. The Act of Congress was not designed, neither could it operate, to provide a punishment for an offense against the laws of the State. One sovereign may not administer the criminal laws of another, or oust another of its jurisdiction to try and punish an offender against its laws, by punishing the same act. Murder is an offense against the laws of Tennessee, whether the perpetrator be a citizen or soldier; whilst it is only an offense against the laws of the United States, when committed in time of civil war, insurrection or rebellion, and when the perpetrator is in the military service of the United States, and subject to the articles of war.
It is insisted for the defendant, that, to subject the defendant to this prosecution, after he has been tried and acquitted for the same alleged murder, is in violation of that provision of the Constitution of the United States, which declares, “nor shall any person be subject, for the same offense, to .be twice put in jeopardy of life or limb.” Now, is a party liable to be twice pun *152 ished for the same act, or would a double punishment for the same act, be in violation of that provision of the Constitution of the United States ?
This question has been several times before the Supreme Court of the United States. The case of Fox vs. The State of Ohio, 5 Howard, 410; 16 Curtis, 447, decided in 1846, was an indictment in the State Court of Ohio, for passing, with fraudulent intent, a base and counterfeit coin, in the similitude of a good and legal dollar, originating under a Statute of Ohio, containing the following provisions, to-wit: “ That if any person shall counterfeit any of the coins of gold, silver or copper, currently passing in this State, or shall offer or put off counterfeit coin or coins, knowing them to be such,” etc., “every such person, so offending, shall be deemed guilty of a misdemeanor, and, upon conviction, shall be imprisoned in the penitentiary and kept at hard labor, not more than fifteen nor less than three years.” The accused was convicted, and, upon the cause being removed into the Supreme Court of Ohio, the judgment was affirmed. Subsequently a writ of error was awarded, and the cause removed into the Supreme Court of the United States, where it was insisted for the plaintiff in error, that the Statute of Ohio was repugnant to the 5th and 6th clauses of the 8th section of the 1st article of the Constitution of the United States, by which Congress is clothed with the power to coin money, regulate the value thereof, and of foreign coin, and to provide for the punishment of counterfeiting the current coin of the United States.
Judge Daniel, in delivering the opinion of the Court, *153 says: “It has been objected, on behalf of the plaintiff in error, that if the State could inflict penalties for the offense of passing base ■ coin, and the Federal Government should denounce a penalty against the same act, an individual, under these separate jurisdictions, might be liable to be twice punished for the one and the same crime; and that this would be in violation of the 5th article to the amendment to the Constitution, declaring that no person shall be subject, for the same offense, to be twice put in jeopardy of life or limb, conceding, for the present, that Congress should undertake, and could rightfully undertake, to punish a cheat perpetrated between citizens of a State, because an instrument in effecting that cheat, was a counterfeit coin of the United States. The force of the objection sought to be deduced from the proposition, is not perceived, for the position is itself without real foundation.
The prohibitions alluded to, as contained in the amendments to the Constitution, as well as others with which it is associated in those articles, were not designed as limits upon the State Governments, in reference to their own citizens. They are, exclusively, restrictions upon Federal power, intended to prevent interference with the rights of the State and of their citizens. Such has been the interpretation given to these amendments, by this Court, in the case of Baron vs. The Mayor and City Council of Baltimore, 7 Pet., 243; and such, indeed, is the only rational and intelligible interpretation which these amendments can bear, since it is neither probable nor credible, that the State should have anxiously in. *154 sisted to engraft upon the Federal Constitution, restrictions upon their own authority — restrictions which some of the States regarded as the sine qua non of its adoption by them. It is almost certain, that, in the benignant spirit in which the institutions, both of the State and Federal systems, are administered, an offender who should hare suffered the penalties denounced by the one, would not be subjected a second time, to punishment by the other, for acts essentially the same; unless, indeed, this might occur in instances of peculiar necessity, or where the public safety demanded extraordinary rigor. But were a contrary course of policy and action either probable or usual, this would, by no means, justify the conclusion, that offenses falling within the competency of different authorities to restrain or punish them, would not properly be subjected to the consequences which those authorities might ordain and affix to their perpetration.”
The same question was again brought to the attention of the Supreme Court of the United States, in the case of Moore vs. The People of Illinois, 14 How., 13; 20 Curtis, 6, decided in 1852.
In that case, the plaintiff in error was indicted and convicted under the criminal code of Illinois, for harboring and secreting a negro slave; and it was insisted? that the Statute upon which the indictment was founded, was void, because in conflict with the provisions of the Constitution of the United States, in relation to fugitives from labor, and with the Acts of Congress upon the same subject; and also because it subjected the delinquent to a double punishment for the same offense, in *155 asmuch as tbe act . was punishable under the laws of Congress.
Judge Grier, in delivering the opinion- of the Court, said: “But, admitting that the plaintiff in error may be liable to an action under the same Acts, of harboring and preventing the owner from retaking his slave, it does not follow that he would be twice punished for the same offense. An offense, in, its legal signification, means the transgression of a law; a man may be compelled to make reparation in damages to the injured party, and be liable also to punishment for a breach of the public peace in consequence of the same act, and may be said, in common parlance, to be twice punished for the same offense.
Every citizen of the United States, is also a citizen of a State or Territory. He may be said to owe allegiance to two sovereigns, and may be liable to punishment . for an infraction of the laws of either.
The same act may be an offense or transgression of the laws of both, ****** yet it cannot be truly averred that the offender has been twice punished for the same offense, but only that by one act he has committed two offenses, for each of which he is justly punishable. He could not plead the punishment by one in bar to a conviction by the other. Consequently, this Court has decided, in the case of Fox vs. The State of Ohio, 5 H., 432, that a State may punish the offense of uttering or passing false coin as a cheat or fraud practised on its citizens; and, in the ease of the United States vs. Marigold, 9 How., 560, that Congress, in the *156 proper exercise of its authority, may punish the same act as an offense against the United States.”
Bishop, in his work on Criminal Law, vol. 1, secs. 144, 145, 146, says: “ Some acts violate the duties both to the United States and to a particular State. Some of these acts, moreover, are made offenses against both by the positive laws of each. On this subject, the doctrine probably is, that whenever Congress has the power to make a particular thing punishable as a crime against the United States, it can declare its legislation exclusive of all other laws tending the matter; but this proposition is not quite clear on principle, and be the proposition correct or not, if the Statute of the General Government, neither in its terms nor by necessary implication, excludes the State law, the authority of the State in the premises is not superseded.” Then, after quoting from the opinion in the case of Moore vs. The People of Illinois, before referred to, the author says: “ These views are, in substance, the prevailing ones.”
The Act of Congress under which the defendant was arraigned and tried, is a part of the military law of the United States, designed to operate only in time of civil war, insurrection or rebellion, and then only upon persons in the military service of the United States, and subject to the articles of war.
Military law is entirely different from martial law, while the latter has been said to be, in fact, no law. The former is defined to be “A code of rules and ordinances, prescribed by competent authority, for the government of the military State, considered as a distinct commu *157 nity, and in the United States is chiefly statutory1 Bishop’s Cr. Law, secs. 44, 45.
The military courts hold, that “a former acquittal or conviction of an act by a civil court, is not a good plea before a Court-Martial, on charges and specifications covering the same act. Upon this subject, it is said, in a very valuable work, entitled “Military Law and Courts-Martial,” by Bennett, on pages 100, 101 and 102: “The whole ground is covered by the incidents of the trial of Captain Howe. He was charged with conduct prejudicial to good order and military discipline, in cruelly heating, kicking and maltreating a private soldier belonging to his command, on the 6th day of December, 1839, and with this aggrevation; all of which cruelty did cause the death of said private James Jones, of Troop Gr, Second Dragoons. The Court Martial convened in April, 1840. The second special plea in bar of trial presented by the accused, was to the effect, that the charges against him were not proper to be tried by a Court-Martial, but only by a civil court; and that the offense, if committed at all, was committed within the County of St. Johns, E. F., and that the Superior Court of the Eastern District of Florida, had jurisdiction in said offense. The Court thus sustained this second plea, and decided that they could not take cognizance of the offense for the trial of which the Court was convened. The commanding General disapproved this decision, inasmuch as the unmilitary conduct charged ought to have been tried by the Court-Martial, leaving the homicide to be tried by the civil tribunal. Out of respect to the civil authority, the com *158 manding General deemed it proper to suspend all proceedings in the case, until the decision of the civil court should be made known. Captain H. would, notwithstanding, be subject to trial before a Court-Martial for any breach of the military law.”
On the 20th of October, 1841, Captain H. was tried before the Court of Florida, upon the indictment for manslaughter which had been found against him, and was, by the verdict of the petit jury, and the judgment of the Court, thereof, acquitted.
The Court-Martial having been suspended in its proceedings, and the impediment to the further military prosecution, the officer being in custody of the civil authorities at the time, having been removed, the Court Avas ordered to re-assemble, and met on the 10th of May, 1842. The accused now pleaded in bar, his arraignment, trial and acquittal on the before-mentioned indictment for manslaughter, showing an authenticated transcript of the record of the trial and acquittal in the Court of Florida. The Court-Martial v'ould not admit the validity of such plea, and proceeded to trial. The accused was found guilty, and sentenced to be suspended from rank, pay and emoluments, for twelve calendar months.
The proceedings, findings and sentence were duly approved and carried into execution.
In his comments, the Attorney-General says, assault and battery and homicide, are violations of the municipal laws of the place where committed, to be tried and punished by the proper tribunal of the State or *159 Territory where peace is broken and laws offended. But the same act being done by an officer or soldier of the army of the United States, oyer - and above the breach of the local law, is a breach also of the law of the United States, in violation of the rules and articles for the government of the armies of the United States.
In such a case, the offender is punishable both as a citizen subject to the municipal laws of the place, and also as a soldier or officer, subject to the military law of the United States. Such double accountability to two different jurisdictions, and- to different and double punishments for the same act, making two different offenses, is settled to be lawful, by the decision of the Supreme Court of the United States, in the case of Moore vs. The State of Illinois. That is to say, the rule of the military law, which decides that an officer or soldier, though tried on the act of killing his superior officer, for murder, by the civil magistrate, is not the less liable afterwards for mutiny by the military law, is in complete accordance with established rules of common civil jurisprudence.
It will be seen, that, according to these authorities, from which we have extracted somewhat at length, both the civil and military tribunals of the United States are in harmony, in holding that a party may be subjected to different and double punishment for the same act, making two different offenses; and that the same act makes two different offenses, when it is in violation of the laws of a State, and also of the laws of the *160 United States; and consequently subjecting tbe party to double punishment for the same act, making two offenses, cannot be said to be in violation of the Constitution of the United States, by placing the party twice in jeopardy for the same offense.
The fact, that the offense may be distinguished by the same name, and the punishment prescribed by the laws of both governments, the same, can make no difference.
The Act of Congress under consideration, declares, that the punishment of such offenses as are therein enumerated, shall never be less than those inflicted by the laws of the State, Territory, or District, in which the offense may have been committed.
It cannot be questioned, but that Congress may have prescribed any other or different punishment for any or all of said offenses. Suppose Congress had seen proper to have provided for the infliction of a small fine only, upon the murderer, upon his conviction before a military tribunal, could it, in any just sense, be said that he had, upon the payment of the fine, atoned for the violation of the law of a sovereign State, the penalty for the violation of which, is death?
Without pursuing the subject further, we are constrained by these authorities, contrary to our pre-conceived opinions, to hold, that the matters stated in the defendant’s plea, constitute no bar to this indictment.
Other questions have been presented in argument, but we do not deem it necessary to extend this opinion by noticing them in detail, inasmuch as they cannot change the result.
*161 It follows, tbe judgment of tbe Circuit Court is erroneous, and must be reversed.
Tbe demurrer will be allowed to tbe plea of defendant, and tbe cause remanded, with leave to defendant to plead over to tbe indictment.