Paul K. DYKES, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

March 12, 1979.

Permission to Appeal Denied by
Supreme Court Sept. 24, 1979.

B. C. McInturff, Kingsport, Olan G. Haynes, Johnson City, for appellant.

William M. Leech, Jr., Atty. Gen., Robert A. Grunow, Asst. Atty. Gen., Nashville, William R. Mooney, Asst. Dist. Atty. Gen., Johnson City, Robert Cupp, Asst. Atty. Gen., Johnson City, for appellee.

## OPINION

DAUGHTREY, Judge.

The defendant-appellant, Paul K. Dykes, was convicted of three counts of concealing stolen property over the value of $100.00, involving a stolen automobile ring operating out of a used car lot located in Johnson City, Tennessee. Dykes was acquitted on a fourth indictment. The jury assessed sentences of four to eight years on each count; the trial judge ordered two of these sentences to be served concurrently with each other and with a related federal sentence Dykes was serving at the time of his state conviction, but consecutively to the third sentence.

On appeal, the defendant raises multiple assignments of error related to (1) the trial court's refusal to dismiss the indictments, (2) the sufficiency of the convicting evidence, (3) the admissibility of the prior testimony of an unavailable State's witness, and (4) the method of sentencing. We find no reversible error, and we therefore affirm the convictions.

The defendant first insists that the trial court erred in refusing to dismiss the indictments in this case on the ground that he had been denied a speedy trial. His contention that the State failed to comply with the 180 day "statute of limitations" of the Interstate Compact on Detainers was properly rejected by the trial judge, since the record fails to show Dykes's compliance or even substantial compliance with the requirements of Article III(a) and (b) of that act. T.C.A. § 40–3901. Nor do we find that the defendant's constitutional right to a speedy trial was impaired in this case. Although the two year delay between the initial indictments (March 1976) and Dykes's trial (March 1978) is sufficient to trigger further inquiry into his situation, other considerations mandated by the four-pronged test of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), fail to substantiate the constitutional claim here.

With regard to the reason for the delay, it appears that the State was ready (and, indeed, anxious) to go to trial as early as November 1976, some seven or eight months after the indictments against Dykes were first returned. The case was initially continued to allow argument on various motions filed by the defendant, one of which, a motion for change of venue, was eventually granted. Further delay in bringing the defendant to trial was occasioned by his conviction in federal court and subsequent incarceration in two different federal correctional facilities, and his apparent failure while incarcerated to execute certain Interstate Compact documents sent to him by his attorney for the purpose of facilitating his temporary transfer to Tennessee. The failure of defense counsel to appear for the setting of a trial date, the defendant's *pro se* filing of a speedy trial motion in federal court in Memphis, requests by defense counsel for continuances to permit trial preparation, and the hearing and granting of Dykes's motion for change of venue further contributed to the delay.

Moreover, it appears that the defendant was not desirous of a speedy trial until it was learned late in February 1977 that his co-defendant, Stanford McKay (who was expected to turn State's evidence and testify against him), had escaped from a federal prison and was at large. A short time after McKay's escape, Dykes's attorneys filed a motion for a speedy trial. Once McKay had been recaptured, however, the record suggests that the defendant's desire for speedy resolution of the charges against him cooled noticeably. Under all these circumstances, we conclude that the delay in bringing the defendant to trial was not unreasonable here and that Dykes himself was responsible, directly or indirectly, for most of the delay that occurred. Furthermore, there is no indication that the defendant was prejudiced by the delay in this case. We therefore hold that he was not denied his constitutional right to a speedy trial and overrule the related assignment of error.

■ The defendant next contends that the indictments should have been dismissed because of their improper resubmission to two subsequent grand juries. The record fails to substantiate the allegation of impropriety. The district attorney indicated that he thought new indictments were necessary to correct the misspelling of the defendant's name, and that in all three instances the same proof was presented to the grand jury. The indictments appear to be valid on their face, and the defendant has cited no authority, and we know of none, which proscribes the resubmission and return of new indictments by a subsequent grand jury. In fact, the law appears to be to the contrary, see *Holder v. State,* 143 Tenn. 229, 227 S.W. 441 (1920); *Hamilton v. State,* 555 S.W.2d 724 (Tenn.Cr.App.1977), and the related assignment is therefore overruled.

The defendant next contends that one of the indictments, involving the concealment of a Chevrolet pickup truck, should have been dismissed under the double jeopardy clause of the federal constitution, as a result of his earlier conviction in federal court for a Dyer Act violation concerning the same vehicle, under 18 U.S.C.A. § 2313.

Federal law provides that "whoever receives, conceals, stores, barters, sells or disposes of any motor vehicle . . . moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000, or imprisoned not more than 5 years or both." The indictment in this case charges concealment of the stolen vehicle in question, the elements of concealment being (1) the fraudulent concealment of (2) goods feloniously taken or stolen from another, (3) knowing such goods to have been so obtained, (4) with the intent to deprive the owner thereof. *Williams v. State,* 216 Tenn. 89, 390 S.W.2d 234, 237 (1965); T.C.A. § 39–4217(B).

The State does not contest the substantial identity of the state and federal offenses here, and there can be no doubt that the facts show a single illegal possession giving rise to both charges. But, the State argues, neither federal nor Tennessee law bars a subsequent prosecution for the same offense. *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959); *State v. Rhodes,* 146 Tenn. 398, 242 S.W.2d 642 (1922); *Martin v. Rose,* 481 F.2d 658 (6th Cir. 1973).

We recognize that no court has yet found a double jeopardy violation based on successive prosecutions by separate sovereignties, a rule which is thought to be necessary to preserve the individual sovereignty of the various state governments and essential to our concept of federalism. The leading cases are *Bartkus v. Illinois, supra,* and its companion case, *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), both relying on *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922). See also *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978). For a review of the state cases, see 21 Am.Jur.2d Criminal Law § 192; 22 C.J.S. Criminal Law § 296; 1 Wharton, Criminal Procedure (12th ed. Torcia 1974). See also *Double Jeopardy: Multiple Prosecutions Arising From the Same Transaction,* 15 Amer.Crim.Law Rev. 259

(1978). It is nevertheless true that a substantial number of jurisdictions have modified the dual sovereignty theory, either by statute [1] or by the adoption of a policy rule prohibiting prosecution for the same offense under certain circumstances.[2] Furthermore, it appears that if Dykes had been prosecuted originally in the state courts of Tennessee, a second prosecution would not have been initiated in federal court absent a directive from the United States District Attorney based, among other considerations, on a finding of "compelling" reasons. *Rinaldi v. United States,* 434 U.S. 22, 98 S.Ct. 81, 54 L.Ed.2d 207 (1977).[3]

In the last decade, the high courts of three states have modified the dual sovereignty theory in recognition of the fact that a single prosecution will often serve to vindicate the institutional, penal and societal interests of both sovereigns. Note 2, *supra.* As the Michigan Supreme Court has recently noted:

> [T]he interest of the Federal and state governments in prosecuting a criminal act frequently coincide. When state and Federal interests do coincide, prosecution by one sovereign will satisfy the need of the other. We note that persons convicted in Federal court only very rarely are prosecuted in state courts for offenses arising out of the same criminal act.

Moreover, we do not perceive an inability or unwillingness to corporate among state and Federal criminal justice officials. Law enforcement agencies are not separate and independent in this age of 'cooperative federalism', as the United States Supreme Court has observed, 'where the Federal and State Governments are waging a united front against many types of criminal activity'. *People v. Cooper, supra,* 247 N.W.2d at 870.

Thus the Michigan court held that the state constitution "prohibits a second prosecution for an offense arising out of the same criminal act unless it appears from the record that the interests of the State . . . and the jurisdiction which initially prosecuted are substantially different," and concluded that "[a]nalysis on a case-by-case basis cannot be avoided." [4] *Id.*

The Tennessee legislature has participated in this trend to a limited extent. Thus T.C.A. § 52–1438 bars prosecution of a drug-related offense following prosecution for the same offense in another jurisdiction. However, the dual sovereignty theory in Tennessee has remained otherwise undisturbed since its adoption over a century ago in *State v. Rankin,* 44 Tenn. 145 (1867). The rule is now being reexamined by the

1. See, e. g., Ark.Stat.Ann. § 41–108 (1975); Colo.Rev.Stat. § 18–1–303 (1974); Ga.Code Ann. § 26–507(c) (1968); Ill.Rev.Stat. ch. 38, § 3–4(c) (1974); Va.Code § 19.2–294 (1975).

2. *Commonwealth v. Mills,* 447 Pa. 163, 286 A.2d 638 (1971); *People v. Cooper,* 398 Mich. 450, 247 N.W.2d 866 (1976); *State v. Hogg,* 385 A.2d 844 (N.H.1978).

3. The so-called "*Petite* policy," as promulgated by the Attorney General, requires that federal reprosecutions must be approved under strict guidelines and justified by "compelling" Government interests. Memo to U.S Attorneys, Department of Justice Press Release, April 16, 1959. The name of the government's policy derives from *Petite v. United States,* 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960). See also *Commonwealth v. Cepulonis,* —— Mass. ——, 373 N.E.2d 1136, 1140 (1978).

4. These interests, according to the opinion in *Cooper,* would include (1) whether there is a significant disparity in the maximum imposable sentences; (2) whether any statutory differences are substantive or merely jurisdictional; (3) whether there are extraneous "reasons why one jurisdiction cannot be entrusted to vindicate fully another jurisdiction's interest in securing a conviction." 247 N.W.2d at 871. The relative sentences in this case are three to ten years under T.C.A. § 39–4217, and not more than five years under 18 U.S.C.A. § 2313; the differences in the statutes appear to be largely jurisdictional, *i. e.,* the federal act requires proof that the stolen vehicle was transported across state lines and that this fact was known to the defendant; the record on the last consideration is undeveloped, except to the extent that it shows conclusively that Dykes had been charged and convicted under the Dyer Act provisions and had been in federal custody since December 5, 1976. Under the Michigan standards, it is difficult to escape the conclusion that Tennessee's interest in Dykes's prosecution had already been served by his prior conviction in federal court.

Tennessee Supreme Court, *Carl Edward LaVon v. State of Tennessee,* Court of Criminal Appeals at Jackson, *cert. granted* November 6, 1978, and docketed for argument at the April 1979 term. We think it is not altogether unreasonable to anticipate the Court's adoption of the more modern position on this question. Nevertheless, until *Rankin, supra,* and *Rhodes, supra,* are actually overruled, we are bound by those decisions, however much we may question their continued wisdom. Furthermore, the prejudice to the defendant in this case has been minimized, as far as possible, by the trial judge's order that the sentence in question be served concurrently with the sentence in a companion count *and* with the federal sentence imposed on Dykes for essentially the same offense. We therefore overrule the related assignment of error.

 The principle thrust of the defendant's attack on the sufficiency of the evidence is that the State failed to produce sufficient corroboration for the accomplice testimony of McKay and of James Hilbert, who owned the used car lot from which the stolen vehicles were seized. The trial judge granted a special request made by the defendant and charged the jury that McKay and Hilbert were accomplices as a matter of law. Under the law of this state, there can be no doubt that some extrinsic proof of Dykes's involvement was therefore necessary in order to convict. *Williams v. State,* 216 Tenn. 89, 390 S.W.2d 234 (1965); *Monts v. State,* 214 Tenn. 171, 379 S.W.2d 34 (1964). However, Tennessee law requires only slight circumstances to corroborate the testimony of an accomplice. *Williams v. State, supra.* Thus, the corroborating evidence may be direct or entirely circumstantial and it need not be adequate, in and of itself, to support a conviction. The requirements of the corroboration rule are met "if there is some other evidence fairly tending to connect the defendant to the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice." *Stanley v. State,* 189 Tenn. 110, 222 S.W.2d 384, 386 (1949). We conclude that there was corroborating proof in this case sufficient "to connect the defendant with the . . . crime in such a way as may reasonably satisfy a jury that the accomplice is telling the truth . . . ." *Id.* at 386.

The evidence showed that various stolen vehicles were kept at Hilbert's used car lot, and were offered for sale with counterfeit Florida titles. According to McKay, these titles were prepared by a Nashville printer from a photoengraving of a blank Florida title form supplied by Dykes. McKay then typed in the vehicle identification numbers of the stolen vehicles and other information tending to make the bogus titles appear to be valid. Prior to their sale, the vehicles were financed on a wholesale basis at a local bank.

 Most of the evidence concerning this illegal operation came through the testimony of McKay and of Hilbert, who had been mysteriously shot and killed two days before Dykes was first scheduled to go to trial, and whose testimony was supplied from the transcript of the prior proceeding against Dykes in federal court. In addition, the two purchasers of the Chevrolet pickup truck testified that Dykes was present in Hilbert's office during the negotiation of the sale, and one of them further testified that approximately one week after the sale, Dykes came to him and asked for the return of the bill of sale, saying that he was picking it up for Hilbert.[5] The proof also showed that Dykes was a co-signer on notes taken out to finance some of the stolen vehicles, and there was evidence tending to establish circumstantially that after two of

---

* After the release of this opinion, the Supreme Court announced its decision in *Lavon v. State,* 586 S.W.2d 112 (Tenn.1979).

5. Even if we were to hold that Dykes could not be prosecuted a second time for his involvement with this particular vehicle, we conclude that evidence of his connection with the truck would be admissible as an exception to the "other crimes" rule, to establish a common scheme, plan or design and thus to identify him as one of the central figures in the theft ring. See generally *Carrol¹ v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963).

the stolen cars (a Chevrolet Monte Carlo and a Mercury station wagon) were seized by the F.B.I., Dykes repaid a third party money which that person had given Hilbert's business partner for the purpose of paying off the bank loan on these two vehicles. We conclude that this evidence, though "slight" and certainly not itself adequate to convict, establishes that Dykes had more than a casual interest in the stolen vehicles, and we hold that it was therefore sufficient to provide the jury with a basis for finding that the evidence corroborated McKay's and Hilbert's testimony concerning Dykes's participation in the fencing operation. We thus overrule the related assignment of error.

The defendant next contends that the introduction of Hilbert's federal court testimony violated his right to confrontation because its use in the state trial was not properly limited by the trial court. In contrast, he points out, the federal judge ruled that evidence concerning the Monte Carlo and the station wagon was admissible only for the purpose of establishing criminal intent with regard to the defendant's involvement with the pickup truck, for which he was on trial in the federal tribunal. The defendant thus contends that cross-examination in federal court as to the Monte Carlo and the station wagon "may" have been less vigorous and searching than would have been the case had Mr. Hilbert been available for examination at the state trial.

 We find no reversible error in the trial court's ruling. It is well-settled that the introduction of prior testimony of an unavailable witness, given under oath and subject to cross-examination, does not violate the confrontation clauses of the state or federal constitutions, where the issues are substantially the same as those involved in the prior proceeding. *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); *Hall v. State,* 65 Tenn. 522 (1873); *Stubbs v. State,* 216 Tenn. 567, 393 S.W.2d 150 (1965), approved in *Mancusi v. Stubbs,* 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Hicks v. State,* 490

S.W.2d 174 (Tenn.Cr.App.1972). Clearly these requirements were met in this case, and we find no constitutional deprivation. The related assignment of error is therefore overruled.

 Finally, we find no error in the trial court's decision to order consecutive service of one of the defendant's sentences. The record demonstrates to our satisfaction that Dykes was a multiple offender within the meaning of *Gray v. State,* 538 S.W.2d 391 (Tenn.1976). Dykes was an active member of an ongoing conspiracy to steal vehicles, counterfeit titles for them, defraud local financial institutions in their financing, and then sell the vehicles to unwary buyers. His conduct thus "indicate[s] criminal activity so extensive and continuing for such a period of time as to warrant consecutive sentencing," in the discretion of the trial judge. *Id.* at 393. The remaining assignment must therefore be overruled.

The judgment of the trial court is affirmed.

CORNELIUS, J., concurs.

BYERS, J., concurs in separate opinion.

BYERS, Judge, concurring.

Although I agree with the majority opinion in affirming the judgment in this case, I wish to state my separate view on the dual sovereignty doctrine.

I have no quarrel with ending dual prosecutions based on the same facts. However, in my view the court is not the proper agency for bringing this about.

As pointed out in the majority opinion, five (5) states have modified the dual sovereignty rule by legislation and two have modified the doctrine by judicial decisions founded upon public policy.

Clearly, unless we are to ignore the decisional law over the past two hundred (200) years, these dual prosecutions do not present double jeopardy questions and are not constitutionally prohibited leaving the judiciary only a public policy platform upon which to base a prohibition of such prosecutions.

The public policy of the state is primarily for the legislature to determine, *Hyde v. Hyde,* 562 S.W.2d 194 (Tenn.1978), and is controlled by the legislature to a substantial extent. *Duck River Electric Membership Corporation v. City of Manchester, Tennessee,* 529 S.W.2d 202 (Tenn.1975).

If there are any reliable indicators to suggest what the public policy of this state is in this area, they point to a policy of state prosecutions of these type cases. We have had dual prosecutions of this nature at least since 1867 as reflected by *State v. Rankin,* 44 Tenn. 145. The courts of this state during the one hundred and twelve (112) years since that decision have not declared this to be against public policy. Significantly, the legislature during this same time has not seen fit to pass legislation as have five other states to prohibit these prosecutions, indicating to me there is no public policy against such prosecutions.

The police power rests with the legislature and the courts can only prohibit the carrying out of such power upon a determination of constitutional infirmity, a condition not having been found to exist in these type cases.

If the practice of dual prosecution in this state is to be ended, curtailed or modified, such change should come from the legislature and not the courts.

The power to declare what shall be unlawful and what acts shall be punished reposes with the several states. U.S.Const., amend. X. This is paramount and federal authority is secondary and derived only by act of Congress. I would further suggest, out of deference to Federalism, for which a lot of good can be said, if there is to be a relinquishment of prosecution to avoid dual punishment such relinquishment should be by the federal authorities rather than the state.